THE STATE ex rel. GEORGE R. CROCKETT v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

In Banc, July 12, 1917.

1. **CUSTODY OF CHILD:** Contract. The leaving of a child by her father with the maternal grandparents to be kept by them until womanhood, is of but limited value in determining who is entitled to her custody.

2. ————: Grandparents. It is not always to the best interests of a child to be reared in wealth and luxury, or to be reared by fond grandparents past the meridian of life.

3. ————: Right of Father: Conditions Upon Which Child May Be Awarded to Others. Under the ruling in Matter of Berenice S. Scarritt, 76 Mo. 565, without a finding of one of two things, namely, (1) either that the father is an incompetent person to have charge of his child, or (2) that the welfare of the child itself, for some special or extraordinary reason, demands a different disposition of it at the hands of the court, the court, upon a habeas corpus for its pos-

session brought by the father against those having it in custody, must award it to him; and a finding that the child is a "frail, nervous, imaginative and strongly emotional little girl, whose love for her grandparents is of pathetic intensity" does not establish the "special or extraordinary reason," and the Court of Appeals in holding that it did contravened In Matter of Berenice S. Scarritt, 76 Mo. 565, and Weir v. Marley, 99 Mo. 484.

4. ———: ———: Welfare of Child: Presumption. The presumption of law is that the best interest of the child is to be in the custody of its father, and with such presumption prevailing a showing against the father must be made or that there is some special and extraordinary reason why such custody should not be in him; and to fail to give effect to that presumption is to contravene the ruling in Weir v. Marley, 99 Mo. 484.

## Certiorari.

RECORD QUASHED.

*Robert M. Reynolds* and *Virgil V. Huff* for relator.

(1) This court will by *certiorari* review and quash the judgment and opinion of the Courts of Appeal in any cause, wherein it appears that said court in reaching and rendering such judgment and opinion, failed to follow the last previous decision of this court upon any question of law or equity arising therein. State ex rel. v. Broaddus, 238 Mo. 189; State ex rel. v. Ellison, 256 Mo. 644; State ex rel. v. Reynolds, 257 Mo. 19; State ex rel. v. Robertson, 264 Mo. 661; State ex rel. v. Reynolds, 265 Mo. 88; State ex rel. v. Ellison, 266 Mo. 604; State ex rel. v. Ellison, 268 Mo. 225. (2) This rule applies in cases of original writs and proceedings in such Courts of Appeal, as well as in other cases. The object of the rule is to secure harmony and uniformity in opinion. Ex parte Conrades, 185 Mo. 411; State ex rel. v. Robertson, 264 Mo. 661. (3) The laws as declared by this court is, that '"in contests of this sort unless the father of the infant child is an unfit or incompetent person to have charge of it, or unless the welfare of the child itself, for some special or extraordinary reason demands a different disposition of it at the hands of the court, it is the

271 Mo.—27

duty of the court to award him the custody." In re
Scarritt, 76 Mo. 565; Weir v. Marley, 99 Mo. 484. (4)
The law presumes against the fact that a parent is an
unfit and incompetent person to have the custody of
his child, and also against the fact of the existence of
any special or extraordinary reason, demanding that the
child be kept from the parent's custody, and the burden
is upon the party resisting the parent's claim to show
and make manifest to the court that he is an unfit or
incompetent person to have the custody of the child or
that some special or extraordinary reason does in fact
exist demanding that for the best interest of the child
it be kept from his custody, and until such matters are
made to appear the parent is entitled to its custody, the
presumptions in favor of his rights, including the pre-
sumption that it is for the best interest of the child,
becoming conclusive and binding upon the court. In re
Scarritt, 76 Mo. 565; Weir v. Marley, 99 Mo. 484. (5)
The law as declared by this court in those two cases
is, that where the right of the parent is resisted upon
the alleged ground of a gift of the infant by the parent
or of a contract or agreement or arrangement whatever
by the parent and another, by which the custody of the
child is awarded or given to such other (except in cases
of deeds of adoption or apprenticeship) the presump-
tions still obtain, notwithstanding such gift, contract,
agreement or arrangement, that the best interest of the
child is to be with the parent, and that he is the proper
person to have it, and the right of custody is under
the law with him. The father's right is paramount.
In re Scarritt, 76 Mo. 565; Weir v. Marley, 99 Mo. 484.
(6) The law as declared by this court in those two
cases, is that:—in all cases where the infant is weak
and helpless, the presumption is that the best interest
and welfare of such infant is best served by being in
the custody of its parent, and that no status, under
such circumstances of infancy, whether created volun-
tarily or involuntarily can be sufficient to overthrow
such presumption, unless it be first made to appear that
the parent is an unfit and incompetent person; and that

the mere fact that some other party might be a proper party to have the custody of such child, and that the interests and welfare of such child would not thereby suffer, or would thereby be fully protected, is not a sufficient showing upon which to base a finding that the best interests of such child demand that the parent be deprived of its custody, or that the parent is an unfit and incompetent person for its custody. In re Scarritt, 76 Mo. 565; Weir v. Marley, 99 Mo. 484.

*Com. P. Storts, John A. Rich, Duggins & Duggins* and *Perry S. Rader* for respondents.

(1) Only jurisdictional errors can be reviewed on this writ; and unless this court finds that the Court of Appeals in its opinion failed or refused to follow the last previous ruling of this court on some·question of law or equity, this court has no jurisdiction of this cause. (a) The said Court of Appeals ''shall have power to issue writs of *habeas corpus* . . . and to hear and determine the same.'' Constitution, art. 6, sec. 12, R. S. 1909, p. 88; Constitution, Amend. 1884, sec. 4, R. S. 1909, p. 101. (b) *Certiorari* "only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued and which are jurisdictional in their nature.'' State ex rel. v. Smith, 173 Mo. 414; State ex rel. v. Broaddus, 245 Mo. 135; State ex rel. v. Dowling, 50 Mo. 136; State ex rel. v. Wiethaupt, 254 Mo. 329; State ex rel. v. Robertson, 262 Mo. 538, 618. (2) This court cannot by the writ of certiorari correct any error of a court of appeals unless it be error affecting its jurisdiction. Unless that court refuses or fails to follow the last· previous ruling of this court on some question of law or equity, its errors in matters of which it otherwise has constitutional jurisdiction cannot· be corrected by *certiorari*. State ex rel. v. Walbridge, 123 Mo. 532; State v. Broaddus, 216 Mo. 342; State ex rel. v. Smith, 173 Mo. 414; In re Breck, 252 Mo. 327; State ex rel. v. Robertson, 262 Mo. 541; State ex rel. v. Dobson, 135 Mo. 12.

(3) The conflict in decisions must be upon a point of law. Upon a question of fact, or a conclusion drawn from acknowledged rules of law and facts in evidence, this court cannot take jurisdiction by *certiorari*. State ex rel. v. Ellison, 256 Mo. 666; State ex rel. v. Ellison, 263 Mo. 515; State ex rel. v. Reynolds, 265 Mo. 93; State ex rel. v. Ellison, 269 Mo. 156. If the substantive facts are undisputed the matter resolves itself into a question of law. Knorpp v. Wagner, 195 Mo. 662. (4) The conflict in decisions should relate to matters of real substance, and does not mean that the decision of the Court of Appeals shall conform to the rulings of the Supreme Court to the point of absolute harmony. State ex rel. v. Reynolds, 257 Mo. 35. (5) The evidence of facts of the case must be gathered from the opinion of the Court of Appeals. State ex rel. v. Reynolds, 257 Mo. 35; State ex rel. v. Robertson, 262 Mo. 539; State ex rel. v. Ellison, 263 Mo. 514. The legality of the writ must be adjudged from matters appearing on the face of the record. State ex rel. v. Patterson, 229 Mo. 368. The writ can be used only to bring up the record. In re Breck, 252 Mo. 318; State ex rel. v. Broaddus, 245 Mo. 136. (6) The decision in every case must depend upon its own facts. State ex rel. v. St. Louis, 241 Mo. 238; Bank v. Clifton, 263 Mo. 218; Epstein v. Railroad, 250 Mo. 39; Bender v. Weber, 250 Mo. 561. "General principles of law may not be applied mechanically, but, in order to produce a just result, they should be applied in accordance with their underlying reason and with an eye to the shifting circumstances in judgment." Knorpp v. Wagner, 195 Mo. 659; Greene County v. Lydy, 263 Mo. 91; Simpson v. Iron Works Co., 249 Mo. 399. And this rule applies when upon *certiorari* it is contended that the decision of the Court of Appeals is in conflict with the last previous ruling of this court upon some question of law or equity. State ex rel. v. Ellison, 269 Mo. 159; State ex rel. v. Ellison, 192 S. W. 727. (7) Habeas corpus is a legal and not an equitable proceeding. 21 Cyc. 283; Kline v. Kline, 57 Iowa, 386; Drumb v. Keen, 47 Iowa, 436; Jennings v. Jennings,

56 Iowa, 290; Kuhn v. Breen, 101 Iowa, 668; Sumner v. Sumner, 117 Ga. 229; Torns v. Neely, 134 Ga. 274; Dunkin v. Dunkin, 123 Iowa, 65; Lundstrum v. State, 140 Wis. 141; Ex parte Canova, 84 S. C. 473; Brown v. Robertson, 76 S. C. 152. (8) The proper disposition of the child in the habeas corpus case being a question of law, the findings or conclusion of the Court of Appeals cannot be reviewed by this court, if there was any substantial evidence to support that conclusion and that court acknowledged the rulings of this court as being the principles of law by which it should be and was guided. Rausch v. Miller, 192 Mo. 303; Brewing Co. v. St. Louis, 209 Mo. 607; Cole v. Mueller, 187 Mo. 640; Culbertson v. Hill, 87 Mo. 555. This court cannot interfere with the discretion of the Court of Appeals in reaching its conclusion unless there was an abuse of that discretion. Ingram v. State, 7 Mo. 294; Walton v. Walton, 19 Mo. 667; In re Wilson, 95 Mo. 184; State v. Sassaman, 214 Mo. 734. (9) The Constitution itself confines this court to a review of the law governing the case, and gives it no power to review the conclusions of the Court of Appeals if it rightly observed the law as previously declared by this court. (a) The Constitution, Article 6, Amendment of 1884, Sec. 6, R. S. 1909, p. 101, says that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Court of Appeals." It does not include conclusions drawn from facts and correct legal principles. If the Court of Appeals followed the principles of law, as laid down by this court, its application of them to the case in hand, or its conclusion in applying those principles to the facts, if wrong, would be mere error; and if the facts were diffierent from those in the Scarritt and Weir cases, this court has no jurisdiction to coerce it into reaching a different conclusion. (b) This court can review only errors of law in a law case, even on appeal. Hamilton v. Boggess, 63 Mo. 252; Simpson v. Iron Works Co., 249 Mo. 399. (c) The Court of Appeals quotes the rule as announced in Berenice Scarritt and

Weir v. Marley, says that rule is of "universal acceptation" and that it "does not overlook or ignore" that rule, but on the contrary, guided by it, reached its conclusion that "the true welfare of the child, which is the primary consideration, will be best promoted by denying the writ." (d) The facts of this case as found by the Court of Appeals and the facts of the cases of Berenice Scarritt and Weir v. Marley as found by this court, are not the same; and being different in material substance, the Court of Appeals had the power and the right to reach a different conclusion than was reached by this court in those cases; and this court cannot interfere with that judicial discretion without destroying the constitutional power of that court "to hear and determine" a writ of *habeas corpus* (Constitution, art. 6, sec. 12).

GRAVES, C. J.—*Certiorari* to the Kansas City Court of Appeals. The case in the Kansas City Court of Appeals was an original proceeding in *habeas corpus* to determine the custody of a child, Laura Marie Crockett, and the writ was sued out at the instance of the father of the child, George R. Crockett, the relator in the instant action. The respondents in the *habeas corpus* proceeding were the grandparents, W. Hall Baker and Laura Baker. The mother of the child died shortly after its birth, and the child was left with the wife's parents, above named, by the father. The Kansas City Court of Appeals appointed a commissioner to take and report the testimony, as well as his conclusions of fact and law. This commissioner took the evidence, and reported the same, together with his conclusion of facts and law to that court. Such commissioner reached the conclusion that the father should have the custody of the child. Exceptions were filed to his report, and the cause presented to the Court of Appeals, where by a divided opinion the custody of the child was awarded to the grandparents. From such opinion ELLISON, J., dissented, but did not certify the case here. Thereupon application was made for our writ of *certiorari* on the

ground that the opinion of the Court of Appeals contravened controlling decisions and opinions of this court. Our writ was awarded, and the record of the Court of Appeals is now before us for consideration and action. Further details in the course of the opinion.

I. This is one of those cases that courts regret to have to decide. It is an exceptional one in its class. In many contests over the possession of children there are outstanding facts which appeal at once to the calm judgment of the court, and no feeling of regret is occasioned by the demand for action by the court. But this case is not one of those. Here the child by seven years' nurture has become entwined in the very lives of the aged grandparents. She is the only child of a much beloved deceased daughter. In her face are the features of that daughter. In their minds and hearts she has in a way taken the place of that daughter. Her residence with them helps dispel the grief felt for the departed one, and their grief seems deep and long-lasting.

On the other hand she is the idol of her father. His feelings for her seemingly have never waned, although after some years, he chose another to take the place of the mother. In other words, it is a case where sentiment may be so stirred as to warp calm deliberate judgment of the legal questions involved.

The record of evidence as recited by the learned judge who wrote the majority opinion in the Court of Appeals is a lengthy one, but it casts neither blemish nor blur upon the reputation of either of the contending parties. It gives one a better view of humanity to read this record, as thus written. Many of its interesting details serve no good purpose in the instant case, because we only have the cold duty to determine the one question, i. e. did the Court of Appeals, upon the facts held in judgment, contravene well established rules of law announced by this court. For this purpose it is not necessary for us to recite all of the minute details of the case as has the learned judge who wrote for the majority in the Court of Appeals. There is much in the

record tending to the view that the child was left with the grandparents to be kept until womanhood. We mean by this that the father had so consented. All this has but limited value in the disposition of such case, for it is well said in Weir v. Marley, 99 Mo. l. c. 495:

"An analysis of the many cases to which we have been cited by counsel serves only to confirm in our judgment the correctness of the ruling of this court in the case of Berenice Scarritt, 76 Mo. 565. That a father cannot by contract, other than such as are provided for by statute, confer upon another irrevocably and absolutely as against himself a right to the custody of his minor child; that notwithtanding any such contract, upon *habeas corpus* for the custody of such child, the custody will be awarded to the father, unless the welfare of the child demands that it should remain in, or be restored to, the custody of the person with whom it was placed by the father under such contract, or that some other disposition be made of it. Such a contract is not to be entirely ignored. It is to be considered, not for the purpose of fixing the rights of the parties, but for the purpose of shedding light upon their actual relations and feelings toward the infant and assisting the exercise of a wise discretion by the court, as to what disposition should be made of it for the promotion of its own welfare."

This ruling leaves to us a review of a quite limited scope of facts, and the ruling of the Court of Appeals thereon in the opinion before us, as to the applicable law, upon such facts, and further whether such ruling contravenes decisions of this court. These facts, their application, and the legal questions we take next.

II. Upon the most vital question of fact in this case, the Court of Appeals says:

"The petitioner resides in Marshall where he is engaged in the real estate business. He is successful in business, belongs to one of the oldest and most highly respected families in the community and is a young man of high character. By his own efforts he has accumu-

lated an estate of more than $4,000 and has a yearly income from his business of $2,000. There is no question of his ability to support and rear his child in a proper and suitable manner."

There is also a finding that the child is "frail, nervous, imaginative and strongly emotional" and that her love for her grandparents "is of pathetic intensity." Further that the grandfather on the mother's side is a man of means (some $50,000 in property) and thereby financially able to look after the child. With these essential facts before us, as held in judgment by the Court of Appeals, does their opinion awarding the child to the grandparents do violence to the rule as announced by this court in the case of In re Berenice Scarritt, 76 Mo. 565, and Weir v. Marley, 99 Mo. 484? Nothing in this record shows the unfitness of the father for the custody of the child. We agree with ELLISON, J., when in the dissenting opinion he says:

"The record shows, and it is conceded, that the character of each is the very highest and that the best moral atmosphere, ideals and example would surround the child at the home of either; and the evidence shows, without dispute, that Mr. Crockett's present wife is a refined and an intelligent woman, even tempered, kind and gentle. They have no children and nothing appears to cause a thought that she would not be attentive, watching and loving. The evidence further shows that each of the parties is financially able to provide for the child and properly educate her. Though it does appear from the evidence that the grandfather is a man of much larger means than the father. This, evidently, was brought out to show that it was for the best interest of the child and her welfare that she be given into the custody of her grandparents. It would be stretching the meaning of law intended to be beneficent, to such length as to destroy its character, if we are to say that the best interest of a child lies with the custodian who has the most money. There are some grandparents, or other kinsmen, in this country who could provide extraordinary luxuries for children at enormous cost, and it

would be a cruel prospect for an affectionate father who found himself outstripped in such measurement of material benefits. Manifestly, the legal expression, 'best interest of the child' was never intended to penalize a parent for living a simple life, so long as he was an honest and respectable man with disposition and capacity to maintain and educate his child.

"This being the situation and these the circumstances, I am led to ask, What stands in the way of the father? Why should a good, affectionate and capable father be deprived of the custody and care of his child? Certainly not the law of nature, and neither does the law of the land. The truth is, the record shows nothing is in the way save the tender impulse and sentiment of the grandmother for her child who came to an untimely death. So far did she allow this love of the memory of her daughter to control her actions that she treated Mrs. Crockett with little respect and scant politeness. It so far blinded her to Mr. Crockett's rights, that, though the father, he was not accorded much more privilege and association with his child than if he had been a mere acquaintance. The constant efforts he made and the different disappointments he had in seeing her, together with the slight and trivial excuses offered, made up several sad pages in the record.

"I think the commissioner's report should be approved and the proper judgment entered upon it."

To this may we be permitted to add that it is not always to the best interest of a child to be reared in the lap of wealth and luxury. On the contrary the facing of the stern realities of life in more humble spheres, often times is the thing which brings out and develops true womanhood and manhood. Nor are we prepared to say that it is always to the interest of a child to have it reared by fond grandparents past the meridian of life. The lives of many girls and boys have been blighted by the unrestrained indulgences of grandparents. But it is not for us to theorize in this case. To us comes alone the cold proposition of law as to whether or not on the recited facts the Court of Appeals has, in

applying the law, contravened the previous rules of this court. We think the court has contravened our rulings, as we shall attempt to show in the concluding paragraph. ·

III. Now bearing in mind the facts of the case let us look to the law as heretofore announced by this court. In the case of In the Matter of Berenice S. Scarritt, 76 Mo. l. c. 582, this court said: .

"As shown by the pleadings, this is a contest between the father of the infant in· question, on the one side, and its grandparents, on its mother's side, on the other.

"There is but little, if any, dispute between the parties as to the law generally applicable to such contests. It is conceded that the father is the natural guardian of his child, and as such entitled to the custody of its person. *It is also conceded that in contests of this sort it is the duty of the court to award the person of the infant to the custody of the father,* unless it is made manifest to the court that the father, for some reason, is unfit or incompetent to take charge of it; or unless the welfare of the child itself, *for some special or extraordinary reason,* demands a different disposition of it, at the hands of the court. Such appears to be the language and current of authorities, to which we have been cited, or to which we have had access. Indeed, this is the admitted law. About this there is no controversy. It is also conceded that the father, by the common law, cannot irrevocably divest himself, even by contract with the mother, or any other person, of the custody of his children. It is held, both in England and in this country, that an agreement by which the father surrenders the custody of his child, is not binding; and that he is at liberty to revoke his consent afterwards and obtain the child by writ of *habeas corpus.*"

In Weir v. Marley, 99 Mo. l. c. 494, we further said:

"In all civilized countries, in which the family is regarded as the unit of social organization, its minor members must and ought to be subject to the custody

and control of those who are immediately responsible for their being, for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness, to be returned to the parents again when they in their turn may need protection, in their years of helplessness and of their child's strength and maturity. The law, at the birth of an infant, imposes upon the parent the duty of such care and protection, to the performance of which the instincts of nature so readily prompt, and clothes him with the right of custody, that he may perform it effectually, upon the presumption that such custody, being in harmony with nature, is best for the interest, not only of the parent and child, but also of society; conceding, however, that the primary object is the interest of the child, the presumption of the law is that its interest is to be in the custody of its parent."

The facts held in judgment by the Court of Appeals do not show the father to be an incompetent person to have charge of his child. On the contrary such facts show that he was not only highly competent, but financially able to render all the dues, imposed by nature and by law, from a father to a child. Nor do the facts found show that "the welfare of the child itself, *for some special or extraordinary reason* demands a *different disposition of it, at the hands of the court."* Without a finding of one of the two things mentioned, under our ruling in Scarritt's case, supra, the child goes to the father. The fact that the little girl is a "frail, nervous, imaginative and strongly emotional little girl, whose love for her grandparents is of pathetic intensity" is not "some special or extraordinary reason" demanding a different disposition of her. In one of her tender years (seven years) the breaking of love for her grandparents, however pathetically intense, can do no serious injury to the child. In fact to do so, would but give her a chance in a very short time to develop the same character of love for the father, which is the natural status for father and child.

If she be nervous, imaginative and strongly emotional she needs the guidance of a loving and dutiful father. On' the facts found, the judgment and opinion of the Kansas City Court of Appeals clearly contravenes the rule of law in Scarritt's case, supra.

Nor did the Court of Appeals give effect to that presumption which we spoke of in Weir v. Marley, supra. We then said that the presumption was that the best interest of the child was to· be in the custody of the parent. With such prevailing presumption, a showing against the parent must be made, or that there was some special and extraordinary reason why such custody should not be in the father.

In our judgment the opinion of the Court of Appeals in this case, upon the facts held in judgment by such court, contravenes both of our opinions, supra. For that reason their judgment and opinion should be quashed and it is so ordered.

All concur, except *Bond, Faris* and *Williams, JJ.,* who dissent.