**Ex parte FERONE.**

**JAHNKE v. ALDRICH et al.**

**No. 22044.**

Kansas City Court of Appeals, Missouri.

May 3, 1954.

■

Gordon C. Shaffer, Jr., Landis & Landis, by John C. Landis, 3d, St. Joseph, for petitioner.

J. B. Beavers, Cameron, for respondents.

DEW, Judge.

The action here in habeas corpus is to obtain the custody of Sandra Kay Ferone, a minor child of the petitioner. After the pleadings were made up, this court appointed Sam Wilcox, formerly judge of the circuit court of Buchanan County, Missouri, special commissioner to take testimony in the proceeding and to report the same with his findings of fact and conclusions of law. With his report of the testimony he concludes that under the law and the evidence petitioner should be awarded the custody of her said minor child, subject to the right of the respondents to visit the child on proper occasions. Exceptions have been filed by the respondents to the special commissioner's report, and suggestions in support of and in opposition to the exceptions have been filed, respectively, by the parties.

The findings of fact reported by the special commissioner are as follows:

"Findings of Fact.

"The petitioner herein, Norma Jean Jahnke (formerly Norma Jean Ferone) brought this habeas corpus proceeding to obtain custody of her minor child, Sandra Kay Ferone (sometimes referred to herein as Tillie Ferone) now past six years of age which child is in the custody of respondents Albert A. Aldrich and Martha Grace Aldrich. Respondent Martha Grace Aldrich is the maternal grandmother of petitioner and maternal great grandmother of Sandra Kay Ferone. Respondent Albert A. Aldrich is the husband of respondent Martha Grace Aldrich but not the grandfather of petitioner.

"Said Sandra Kay Ferone was born on the 19th day of December, 1946, in Hopkinsville, Kentucky of petitioner and her former husband, Michael Ferone. Petitioner obtained a decree of divorce from Michael Ferone (father of Sandra Kay) on March 22, 1947, in which divorce proceeding no order was made concerning the custody of the child.

"When the child Sandra Kay was nine days old she was taken by petitioner to the home of respondents and after some discussion between petitioner and respondents she was left with the respondents. Respondents contend that petitioner threatened to abandon said child unless respondents would take her. This was denied by petitioner. The child has since said time been with the respondents with the exception of some visits to the petitioner and at one time said child remained with the petitioner for a length of time which the evidence shows was from three to seven months.

"On May 12, 1947, petitioner was married to one Julius Jahnke who is and has been for nine years last past in the United States Navy. Of petitioner's marriage with Julius Jahnke

there have been two children born, Julius Albert, five years old and Lindra Kay, three years old. Petitioner and her present husband now live in Green Cove Springs, Florida, where the husband is stationed. The evidence shows that he will be located at that place for some ten or eleven months in the future, and then if he is transferred, his wife and children will accompany him to whatever place will then be his home port.

"The chief contention by the respondents in this case is that the petitioner is not a fit and proper person to have the care of said minor child and that the best interests of said child would be served by leaving her with respondents.

"Evidence was offered showing that the petitioner shortly after her marriage with Jahnke was arrested at Key West, Florida, for indecent exposure or immoral conduct and was fined a nominal amount. The evidence as to why she was arrested and paid a fine is not clear as the record of the charge or assessment of the fine was not introduced in evidence. She claims it was because she did not have a health card and her husband attempted to substantiate her in that respect. She was employed in a restaurant and they claim it was necessary to have a health card showing freedom from venereal disease. The evidence on this matter is not entirely clear except that she was arrested for what she termed immoral conduct or indecent exposure and was fined for same.

"Respondents claim that petitioner indicated she was going to leave her present husband and marry another man and that if he would not take the second child born to her that she would abandon it. This was denied by petitioner.

"The most damaging testimony concerning the petitioner was that in the fall of 1951 she and her two children by her present husband were staying at a roominghouse in St. Joseph, Missouri, and while there another man was found in her room. The evidence is quite clear from the police officers and other witnesses that this occurred. Some evidence showed that at one time he was in bed without any clothing on and that the petitioner although clothed, was lying across the bed on the covers. Petitioner claims that she was doing some washing for this man and the evidence showed there were clothes hanging in the room. The evidence on this point indicated strongly that the petitioner had been guilty of misconduct, and the humane officer had the children taken from the petitioner and placed in the home of petitioner's husband's brother where they remained for some time. The present husband of petitioner being notified came to St. Joseph and went over the matter with the petitioner. He states that she explained the whole matter to him; admitted her guilt and her desire to refrain from repeating such conduct. After a few days the petitioner and her present husband appeared to have been reconciled to each other and went back to his home base. So far as the record shows they have been living together peaceably since said time.

"The petitioner visited her minor child, Sandra Kay, on different occasions and shortly before this proceeding was instituted she and her present husband went to Amity, Missouri, and claim they were advised that if they could get the child off the premises of respondents that they would be permitted to keep her. There was a struggle between the petitioner and her husband on the one side and the respondents on the other. Finally, they all went to Maysville where each refrained from preferring charges against the other. The child was left in the custody of the respondents. There is evidence on the part of petitioner that at numerous times prior to the above incident she made demand for the custody of said child of the respondents but was refused.

Much of this is denied by the respondents..

"There is other evidence as to whether or not the petitioner paid proper attention to the child on one occasion when it was sick and after it had been taken to a doctor. She explains that when the child was taken to the doctor that he said it would be all right and that thereafter she called to inquire about the child and then left with her husband for his home base.

"There was considerable conflicting evidence as to how much money or other articles had been contributed by petitioner and her present husband for the support of Sandra Kay.

"The evidence shows that the respondents are between 60 and 70 years of age; that respondent Albert A. Aldrich had a stroke of paralysis many years ago; that he now has heart trouble and uses crutches to get around. It is also shown that respondent Martha Grace Aldrich, maternal great grandmother of Sandra Kay is suffering from diabetes and nervousness.

"It is not shown just what property the respondents have, although it is shown that at one time at least, they owned a farm and at another time a house and lot.

"The petitioner's husband states that he intends to remain in the navy until he has served 20 years and then can retire on pay. According to his testimony his monthly pay is now approximately $300.

"There are many other minor matters and controversies between the parties which do not seem to be of sufficient materiality to dwell upon."

Following the findings of fact, the special commissioner's conclusions of law are to the effect that the parents of the minor child are entitled to its custody to the exclusion of all others unless such parents are found manifestly and presently unfit to have such custody; that past transgressions of moral law on the part of a parent does not necessarily disqualify him as the proper custodian of his child in the light of present rehabilitation as to conduct and character; that a parent is not irrevocably divested of his child because of a previous agreement for its custody in another person; that the welfare of the child is superior to the claims of any one to its custody to which all other considerations must yield. The report cites in support of these principles of law the following cases: Tomlinson v. French Institute of Notre Dame De Sion, 232 Mo. App. 597, 109 S.W.2d 73; Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215; State ex rel. White v. Swink, Mo.App., 256 S.W.2d 825; Ex Parte Reinhardt, 88 Mont. 282, 292 P. 582; Edwards v. Engledorf, Mo. App., 192 S.W.2d 31; Edwards v. Edwards, 84 Mo.App. 552; State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140; Wilson v. Wilson, Mo.App., 260 S.W.2d 770; Ex Parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949; Cox v. Carapella, Mo.App., 246 S.W.2d 513; Knepper v. Knepper, 139 Mo.App. 493, 122 S.W. 1117; Armstrong v. Price, Mo.App., 292 S.W. 447; Meredith v. Krauthoff, 191 Mo.App. 149, 177 S.W. 1112.

The further conclusions and recommendations of the special commissioner are as follows:

"Under the facts and the law as above stated this commissioner finds that primarily the petitioner as mother of the child is entitled to its custody in the absence of showing that she is unfit or incompetent to have said child or that for special reasons the welfare of the child requires that its custody be elsewhere.

"Considering the fact that although petitioner was guilty of misconduct in the past, she is now reconciled with her husband and for almost two years her conduct has been shown under the evidence to be good and that she now has two children by her present marriage, this commissioner does not feel that she has been proven to be so unfit or incompetent that she should not be en-

trusted with the custody of her own offspring. Neither does the commissioner feel that the best interests of the child would be served by remaining with the respondents. The respondents are both of advanced age, the respondent Albert A. Aldrich being a sufferer from paralysis and heart trouble and required to use crutches; the respondent Martha Grace Aldrich being a sufferer from diabetes and nervousness.

"The commissioner was not given the benefit of any testimony by the respondent Martha Grace Aldrich, the attorney explaining that she was nervous. Therefore, we do not have her version as to any of the matters in controversy or as to her ability or willingness to care for the minor child, Sandra Kay. The only evidence in support of the respondents aside from the police and Humane Society officer was offered by the respondent Albert A. Aldrich, with the exception of some evidence by the foster son, James Bernard Troxell Aldrich.

"With the condition of respondents compared with the present status of the petitioner whose husband has a comfortable income and willing to care for the child and the fact the petitioner has two small children with whom the child Sandra Kay would be associated in the home, the commissioner is of the opinion that the best interests and welfare of Sandra Kay require that she be with her mother and half sister and half brother.

"The commissioner therefore recommends that petitioner's prayer be sustained in this proceeding and that the custody of Sandra Kay be awarded to said petitioner with the right of respondents to visit said child on all proper occasions".

The respondents have filed exceptions to the special commissioner's report consisting of five specifications, namely: (1) That the commissioner failed to find that respondents are the adoptive parents of petitioner and adoptive grandparents of Sandra Kay Ferone, and attached to their exceptions a certified copy of a judgment of adoption of petitioner by the respondents dated July 20, 1928; (2) that the conclusions of the commissioner that petitioner has rehabilitated herself because of no misconduct shown within the last two years was error because (a) the only testimony as to this was by petitioner and her husband; (b) and those who had knowledge of her conduct only after this action was instituted, and because the report states (c) as evidence of rehabilitation that petitioner had become reconciled with her husband when there was no evidence of any separation between them on that account; (3) that the report failed to consider the moral fitness of petitioner's husband who would also be responsible for the training and upbringing of the child; (4) that the conclusions of the commissioner as to the health of respondents was without any evidence that their state of health had materially altered in any degree since they took custody of the child; (5) that if the recommendations of the commissioner be carried out the child would be taken from the jurisdiction of this court, and respondents would be denied the right of reasonable visitation. Respondents request that the report of the commissioner be set aside and the relief prayed for denied.

As to exception (1) the record does not disclose any judgment of adoption of the petitioner by the respondents and will not here be considered. As to the exception (2) (a) and (b), there was testimony by others than the petitioner and her husband as to her rehabilitation within the past two years, and by those whose knowledge of her conduct was not limited to the time subsequent to the filing of this action. As to (c) there was positive evidence on the part of the petitioner that a reconciliation had been affected between her and her husband after the occurrence in St. Joseph, Missouri in 1951.

It is apparent that exception (3) is not well taken since the report of the commissioner takes note of the contributions made by petitioner's present husband to the support of Sandra Kay, his interest in her and

repeated efforts to obtain the custody of the child for his wife, the petitioner; also the report makes note of the present plan of petitioner's husband to complete his term in the navy, and for provisions for himself and family.

Pertaining to exception (4) the present age and afflictions of the respondents are considered in the report and the inferences evident therefrom that the ability of the respondents to continue their responsibility for the care, education and training of Sandra Kay will necessarily diminish progressively in the near future.

Exception (5) to the effect that if the commissioner's recommendations be carried out the child will be taken from the jurisdiction of this court would not in and of itself be a material objection, if otherwise it be to the best interest of Sandra Kay to be in her mother's custody. So far as visitation privileges accorded to the respondents are concerned, we do not understand such to be a matter of right as to a child not their own.

We have considered the findings of fact by the special commissioner after a careful reading of the record and find that the exceptions thereto are not well taken.

As to the recommendations of the special commissioner based upon his findings of fact and conclusions of law, we do not approach our consideration thereof without some misgivings. The situation so far as the best interests of Sandra Kay are concerned, is not ideal. Her welfare is the superior objective in the matter of her custody. To that all other considerations must yield. However, it does not follow that the right of a parent to the custody of his or her child is to be ignored in such a proceeding. All else being equal, such right would be determinative as between such parent and all others. It is only when the exercise of such primary right by the parent is shown not to be to the best interest of the child, by reason of manifest unfitness or for other good and sufficient reasons, that a parent should not have the custody of his or her child.

It is evident that the welfare of Sandra Kay in her present custody will not improve with time. In all probability, due to the present advanced age and disabilities of the respondents, her great-grandmother and great-step-grandfather, and their increasing infirmities, her present custody would be rendered more and more precarious as her growing need for care, training, counsel and society increases. Such is no less probable because of their genuine affection for Sandra Kay, evidenced by their kindly ministrations in her behalf practically all her life. Should her custody be given to an institution or some third parties, the natural affection of a parent, of inestimable value to a growing child and for which, ordinarily, there is no adequate substitute, would not be present in such relationship. The alternative, namely, the granting of her custody to her natural mother, could and should, if such custody be properly administered, give Sandra Kay a natural mother's affectionate care and companionship, would afford her association with her half brother and half sister, the aid and support of an understanding and affectionate stepfather, and a place of security in the family and home.

It is true that the evidence discloses moral transgressions on the part of petitioner and her husband during and prior to 1951. If the evidence showed the present continuance on their part of such attitude toward moral concepts, petitioner would not be justified in urging her right to the custody of her child nor would the court be warranted in granting it. However, there is substantial evidence of a relentless series of unfortunate mitigating circumstances that forced their influence upon the mind and health of petitioner at such times, and the proof is positive and the inferences strong to the effect that for the past two years both petitioner and her husband have fully realized the mistakes they have made and fully repented of them; have become entirely reconciled one to the other and established a happy family and home. The commissioner saw and heard the petitioner and her husband as witnesses and has reached the conclusion that the petitioner is presently qualified morally, physically and

otherwise to have the custody of her child. We do not feel justified, under the record, to rule otherwise. It is our conclusion that the welfare of Sandra Kay will be best served by awarding her custody to her mother, the petitioner.

The petition is granted and the custody of Sandra Kay is hereby awarded to the petitioner. As to the privilege of visitation to be accorded respondents herein, we leave that to the sound discretion of the petitioner.

All concur.