In the Matter of S———— and L————, Minors.

L————, Petitioner,

v.

Mr. and Mrs. L————, Respondents.

No. 29964.

St. Louis Court of Appeals.

Missouri.

Nov. 14, 1957.

John J. McAtee, John F. Molloy, Clayton, for petitioner.

Lawrence E. Manion, Clayton, for respondents.

## PER CURIAM.

This is an original proceeding in habeas corpus instituted by the mother of two minor daughters who are respectively eleven and five years of age. The children are in the custody of the respondents who are their paternal grandparents.

The respondents in their return to the writ admitted that the petitioner was the mother of the children but alleged that she was an unfit person to have their custody. This was denied by the petitioner and the sole issue presented was the fitness of the mother to have the custody of her daughters.

When the issues were thus made, the court appointed a Commissioner to hear the evidence and to report such evidence together with his finding of facts and conclusions of law. Such report was made and it recommended that the children be discharged from the custody of the grandparents and committed to the custody of their mother. To this report the respondents filed their exceptions which have been submitted and considered.

The facts adduced before the Commissioner were that the mother was married in 1945 to a son of the respondents. Petitioner and her husband were twenty years of age at the time of their marriage. Their first child was born in 1946 and the other was born in 1952. The husband was a filling station attendant. His hours at work kept him until 9:00 p. m. three days a week and on the other days he worked until 6:30 p. m. He earned $105 a week. He spent considerable time in taverns and drank excessively. He frequently would not return home until 1:00 or 1:30 a. m. On one occasion he beat his wife so badly that it was necessary for her to get medical attention.

Some time prior to the occasion when she had been beaten the husband had introduced his wife to a man who was a friend of his. After the beating the petitioner started meeting this friend about three or four times a week. The meetings usually took place in a certain tavern which was described by the petitioner as a "real nice place", and there were occasional meetings at other taverns. The petitioner took her daughters with her at all times when she had these meetings with the friend. She said that she and her husband's friend and her daughters were usually together for one or two hours; that she would have some beer and listen to the "juke box". She said that her relationship with the friend did not go beyond an occasional kiss or holding hands.

The petitioner filed suit for a divorce from her husband in 1956 and left him taking with her the two children. This occurred before Christmas. The husband came after them and threatened to kill himself if she did not return. She returned because of this threat and a short time thereafter they moved to a new house that they had been building. The petitioner testified that on April 17, 1957, her husband returned

from work at about 9:00 p. m. and that the two of them and the children went to his parents' home for a visit. After their return the petitioner retired for the night but was awakened at 1:00 a. m. by her husband who told her that he had asked the man that she had been seeing to come to the house and that he was going to get things settled. Shortly after this the friend arrived and they all sat at a table. The husband asked the petitioner if she was going ahead with the divorce. She answered that she had not felt any affection for her husband since he beat her. At this point the husband got up and stabbed her in the back with a butcher knife and then stabbed himself in the abdomen. The petitioner later ran to the front lawn and her husband followed her. In an effort to restrain the husband the friend was stabbed and all were later taken to the County Hospital. The husband was dead upon arrival and the other two were critically wounded. The friend survived but later died from natural causes and the petitioner has now recovered.

The respondent grandfather testified that he was fifty-three years of age and was engaged in the building business. His net worth was between $75,000 and $80,000. He has five sons living and two sons live with him. One of these is fourteen and the other is twenty-one. The respondent said that he was willing to keep the children and provide a home for them. He lived in a four-bedroom house and the two granddaughters had a room of their own. He obtained custody of the children on the night of their father's suicide after he received a call from the marshal of the town where his son had resided. He said that he was willing to raise and educate the children. The children were attending the same church which they had attended prior to their parents' move to their new home. He also said that one of the girls awakened frequently at night with fright and that on one occasion the two children took a taxicab and returned to their mother. The

mother visited them almost every day for periods of two to three hours.

The grandmother's testimony was to the effect that the older child was hard to handle after her mother's visits. She also said that her daughter-in-law was a poor housekeeper and that prior to the time that the children moved to their new home they had been regular in their attendance at Sunday School and had always been brought to Sunday School by their mother.

The petitioner had previously sought to obtain custody of the children by a writ of habeas corpus in the Circuit Court of St. Louis County. At that time she was still being treated for her wounds and had no employment or home to which she could take the children. That action resulted in a decree leaving the children in the custody of the grandparents. Since that time, however, the petitioner has fully recovered and is employed. She has a home available with her twin sister. This sister lives in a six-room house located upon a large lot. She has one small child of her own and is the godmother of the children here involved. Both she and her husband want the petitioner and her children to live with them. The petitioner's earnings and Social Security dependency benefits that she will receive if she has the children would give her an income of around $200 a month.

A number of witnesses testified that the petitioner took good care of the children and was a good housekeeper and that they had known the petitioner as a good moral person.

The petitioner testified that she realized she erred in her conduct prior to her husband's death. She knew that she should never have taken her children to taverns and stated that she would see that they were raised in a wholesome atmosphere if she had custody of them.

There was no controverted testimony about the reprehensible conduct of the mother prior to her husband's death, but there was some question as to whether it had been going on for six or eight months.

The respondents are certainly persons of good character and are seeking to help their grandchildren. The question of whether or not the mother was a good housekeeper and properly cared for her children must be resolved in her favor except for the period when she took them with her to taverns. The grandparents being of an older generation perhaps had a different conception of housekeeping than the contemporaries of the mother who said that her house was well kept. The mother's witnesses were substantial people and all considered her housekeeping good and the physical care accorded the children adequate. The mother, prior to her meetings with her husband's friend, had been decent in her conduct and her background was that of a moral person. Her lapse from this course of conduct, while not excusable, was induced in part by the neglect and mistreatment accorded her by her husband.

The children, while they are well loved and cared for by their grandparents, are not well adjusted to the change, and the fact that they are not with their mother is disturbing to them. It also appears that the shock of the bloody end of her marriage has been sufficient to return the petitioner to a proper course of conduct and a desire to raise her children in a wholesome atmosphere.

It is well established under our law that a parent has a natural right to the custody of his or her minor children. This right will not be denied in a contest between a parent and a third party unless it is shown that the parent for some strong and compelling reason is unfit or incompetent so that the future welfare of the child itself demands a different disposition. State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140; Ex parte De Castro, 238 Mo. App. 1011, 190 S.W.2d 949.

The fitness of a parent to have custody of a child must be determined by the present existing conditions. Evidence of past conduct is material only as an aid to determine the present existing conditions. Ex parte De Castro, supra; Daugherty v. Nelson, Mo.App., 234 S.W.2d 353; In re Cole, Mo.App., 274 S.W.2d 601; Cox v. Carapella, Mo.App., 246 S.W.2d 513. As applied to the facts before us, it appears that the respondents' evidence is insufficient to prove the present unfitness of the petitioner.

The judgment of the court therefore is that the children be discharged from the custody of the grandparents and committed to the custody of the petitioner.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.