In the Interest of K.K.M., a Minor, Under Seventeen Years of Age.

No. 45698.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 25, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied March 17, 1983.

Application to Transfer Denied April 26, 1983.

Dewey S. Godfrey, Jr., St. Louis, for appellant.

Daniel P. Card, II, Donald W. Paule, Clayton, for respondents.

Theodore R. Allen, Jr., Hillsboro, for guardian ad litem.

SNYDER, Presiding Judge.

In this habeas corpus proceeding petitioner K.F. seeks custody of her daughter, K.K.M., who was born on August 12, 1968. Custody of K.K.M. was awarded to her father in a marriage dissolution proceeding in 1975. The father died on or about November 23, 1977 and K.K.M. has been in the actual custody since early 1978 of her paternal grandparents, respondents J.J.M. and E.M., to whom letters of guardianship were granted on May 9, 1978. Petitioner has questioned the validity of the guardianship proceedings.

This court issued its writ of habeas corpus on April 19, 1982. Now the court finds that the writ lies and orders that K.K.M. be discharged from the purported legal custody of the respondent grandparents based on the questioned guardianship proceedings, but further directs that the cause be transferred to the juvenile division of the circuit court of Jefferson County, which is directed to award legal custody of K.K.M. to the respondent grandparents, subject to any future order of the circuit court.

After the issuance of the writ, which directed respondents to show cause why they held K.K.M. in their custody, this court issued its order directing the Honorable Irvin D. Emerson, judge of the juvenile court of Jefferson County, to hold hearings and determine first, the validity of letters of guardianship dated May 9, 1978 which had been issued by the probate division of the circuit court of Jefferson County, and which appointed respondents guardians of the person of K.K.M.; and second, if the letters of guardianship were found to be invalid, to hold a hearing, receive evidence, and make a recommendation concerning the fitness of the petitioner as a parent and the custody provision which would be in the best interests of the minor, K.K.M.

Judge Emerson has filed his findings of fact and conclusions of law in which he recommended that this court rule the letters of guardianship to be void for lack of jurisdiction and that the best interests of K.K.M. require that her custody remain with the grandparents, with liberal temporary custody and visitation rights to be granted to the mother. The petitioner filed exceptions to Judge Emerson's report which she recommended be overruled. It is now this court's duty to decide whether the report of Judge Emerson should be adopted in whole or in part.

The first issue is whether the letters of guardianship appointing respondents guardian of the person of K.K.M. deprive this court of jurisdiction to issue the writ; whether this habeas corpus proceeding is an impermissible collateral attack on the prior guardianship order. The jurisdiction of the dissolution court abated when the child's father died. See *G.C.J. v. G.G.*, 510 S.W.2d 193, 195[1–4] (Mo.App.1974). This court agrees with Judge Emerson that the letters of guardianship are void.

A question of jurisdiction may be raised at any time, and a judgment entered without jurisdiction may be attacked collaterally. *Hering v. Cone*, 622 S.W.2d 703, 704[1, 2] (Mo.App.1981); cf. *Higgins v. Missouri Division of Family Services*, 580 S.W.2d 300, 302 (Mo. banc 1979). The same general rule applies to custody orders. The

legality of custody orders may properly be questioned by habeas corpus. See *In re Lipschitz*, 466 S.W.2d 183, 186[7, 8] (Mo. App.1971).

■ The defects in the pleadings and the propriety of service by publication in the guardianship proceeding thus may be considered in this habeas corpus action and the consideration does not constitute an impermissible collateral attack on the guardianship order.

■ Proper service of process in the manner and form prescribed by law is a prerequisite to a court's jurisdiction. *State ex rel. Northwest Ark. Produce v. Gaertner*, 573 S.W.2d 391, 396[3] (Mo.App.1978). Petitioner, the natural mother, was served by publication in the guardianship proceeding. Constructive notice must be given in strict compliance with the provisions of law. *In re Marriage of Breen*, 560 S.W.2d 358, 364 (Mo.App.1977).

■ The statement filed in the guardianship proceeding in compliance with Rule 54.17(b) was defective because the respondents knew or could have ascertained petitioner's address. This defective or improper service by publication was the equivalent of no service at all. See *State ex rel. Northwest Ark. Produce v. Gaertner*, 573 S.W.2d at 396[3].

■ Moreover, the failure by respondents to use their son's friendship with petitioner's brother to ascertain petitioner's whereabouts constitutes a failure to employ the most reasonable means to apprise petitioner of their action. Such failure to give petitioner "... notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" was a violation of petitioner's right to due process under U.S. Const.Amend. XIV. See *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657[8], 94 L.Ed. 865 (1950).

■ As a result of faulty compliance with Rule 54.17(b) and the due process requirements of U.S. Const.Amend. XIV, the probate division was without jurisdiction to issue the letters of guardianship. Therefore, this court has jurisdiction because habeas corpus is a proper proceeding where a natural parent seeks to regain custody of her minor child who is held by a third party without authority of a valid court order. *M.P.M. v. Williams*, 611 S.W.2d 274, 277[1, 2] (Mo.App.1980); *Ex parte Ray*, 573 S.W.2d 152, 155 (Mo.App.1978).

■ Turning to the merits of the action, this court notes that whenever a minor child is brought into the jurisdiction of a court for a determination of its custody, the inquiry is in the nature of an equitable proceeding and the claims of all parties, even in the case of the parents themselves, must be subordinated to the paramount concern for the child's welfare. *W. v. M., W. & W.*, 490 S.W.2d 64, 67[4–5] (Mo. banc 1973); *Ex parte De Castro*, 238 Mo.App. 1011, 190 S.W.2d 949, 951[1] (Mo.App.1945), cited by the Missouri Supreme Court in *In re Shepler*, 372 S.W.2d 87, 90[2] (Mo. banc 1963).

■ "The law presumes that the best interests of the minor children are best served by the vesting of custody in the parent." *M.P.M. v. Williams*, 611 S.W.2d 274, 277[3–5] (Mo.App.1980). The natural parent has a superior right to custody of the child as opposed to the interests of third parties. *In re Richardet*, 280 S.W.2d 466, 471[2] (Mo.App.1955). This superior right is not absolute, but rather, it is a rebuttable presumption which may be overcome by evidence that the parent is unfit or incompetent to take charge of the child. *In re Wakefield*, 365 Mo. 415, 283 S.W.2d 467, 472[7, 8] (Mo. banc 1955); *G.C.J. v. G.G.*, supra at 195[6].

The judge of the juvenile division of the circuit court who heard the evidence specifically recommended that this court find that petitioner was "not necessarily and [sic] unfit parent." Although the hearing court's recommendation is not binding, this court hesitates to substitute its judgment for that of the judge who viewed the witnesses and heard the evidence.

The issue then is whether evidence of factors other than unfitness and incompetence of the natural parent may rebut the presumption that granting custody of the child to the natural parent will serve the best interests of the child. This court holds that the presumption which favors vesting of custody in the natural parent must fall whenever the best interests of the child, for some special or extraordinary reason or circumstance, mandate that custody be vested in third persons, regardless of whether the evidence establishes the unfitness or incompetence of the natural parent.

In the first reported decision in Missouri to speak to the issue (of whether special factors other than the fitness or incompetence of the natural parent may be considered in determining the best interests of the child) the Supreme Court was faced with the question of whether a natural father could be bound by a contract which gave custody of his child to the child's maternal grandparents. *In the Matter of Scarritt,* 76 Mo. 565 (1882). The court stated that "... it is the duty of court to award the person of the infant to the custody of the father, unless it is made manifest to the court that the father, for some reason, is unfit or incompetent to take charge of it; or *unless the welfare of the child itself, for some special or extraordinary reason, demands a different disposition* of it, at the hands of the court." 76 Mo. at 582. (emphasis added). The Missouri Supreme Court went on to hold that custody should be vested in the father because the contract was not binding and the best interests of the child demanded its surrender to the father.

Although strictly speaking, *Scarritt* does not control the issue presented in the instant case, it does point out that considerations other than parental unfitness and incompetence may be relevant in actions to determine the proper custodian of a child. Of particular importance to the case at bar is the distinction made by the court between the facts in *Scarritt* and the facts in other cases which might lead a court to vest custody in a third party:

Had this contest arisen three or four years ago, during the period of helpless infancy; or had it been deferred until the child grew to be some twelve or thirteen years old, and the affections of long association and tender treatment had been allowed to supplant the ties of blood, as in the case of *Pool v. Gott,* 14 Law Reporter 269, and other like cases, from Kansas and elsewhere, cited by respondents, (and which in important particulars are totally unlike the case at bar,) a different question would have arisen.

76 Mo. at 588. The hypothetical situations noted by the court do not involve any intimation of parental unfitness or incompetence. Thus, a century ago, the Missouri Supreme Court was prepared to award custody to a third party where there was no showing that the natural parent was unfit or incompetent to take charge of the minor.

The statement of the nature of the natural parent's right in *Scarritt* was cited with approval in *State ex rel. Crockett v. Ellison,* 271 Mo. 416, 196 S.W. 1140, 1141–1142 (Mo. banc 1917). The court specifically addressed the question of whether factors other than the father's unfitness and incompetence could be relied upon to vest custody in the grandparents: "Nor do the facts found show that 'the welfare of the child itself for some special or extraordinary reason demands a different disposition of it at the hands of the court.'" 196 S.W. at 1142. Although the court in *Ellison* held that the maternal grandparents had not rebutted the presumption in favor of the natural father, the fact that the court addressed the question of whether extraordinary circumstances were present indicates that the court understood that a natural parent might not be granted custody if persuasive special or extraordinary circumstances existed.

Other cases have also stated that the presumption in favor of vesting custody in the natural parent may be rebutted not only by evidence of the parent's unfitness or incompetence to take charge of the child, but also when the welfare of the child for some special or extraordinary reason de-

mands that custody be granted to one other than the natural parent. *In re Richardet,* 280 S.W.2d 466, 471[2] (Mo.App.1955); *Cox v. Carapella,* 246 S.W.2d 513, 514, 515[1, 2] (Mo.App.1952); *Daugherty v. Nelson,* 234 S.W.2d 353, 365[21, 22] (Mo.App.1950).

On the other hand, some of the reported decisions appear to state that only evidence of parental unfitness or incompetence will rebut the presumption favoring the natural parent. See *In re Wakefield, supra* 283 S.W.2d at 472[7, 8]; *M.P.M. v. Williams,* 611 S.W.2d 274, 278 (Mo.App.1980); *In re S.,* 306 S.W.2d 638, 641[1] (Mo.App.1957); *Ex parte De Castro,* 238 Mo.App. 1011, 190 S.W.2d 949, 959[13] (Mo.App.1945); *Bell v. Catholic Charities,* 170 S.W.2d 697, 699[1, 2] (Mo.App.1943). It has even been stated that parental unfitness alone is the only way to rebut the presumption. *Ex parte Archer,* 253 S.W. 1095, 1096[3–5] (Mo.App. 1923).

In *M.P.M. v. Williams, supra,* this court was faced with the question of whether a child's stepfather had proved the unfitness of the natural father when the natural father sought to take custody of the child from the stepfather. This court affirmed the trial court's finding that the natural father was not unfit. 611 S.W.2d at 278[8, 9]. Evidence of other special or extraordinary factors which may have rebutted the natural parent's right to the child was not before this court. Any intimation that evidence of such special or extraordinary factors other than parental unfitness or incompetence would not rebut the presumption in favor of the natural parent would have been beyond the scope of the issues presented to the court in *M.P.M. v. Williams* because the court was concerned only with whether the stepfather had proved the natural father's unfitness, not whether other factors would lead a court not to vest custody in the natural parent. There were no special or extraordinary factors present.

Likewise, the opinions in other cases which intimate that the presumption in favor of awarding custody to the natural parent may be overcome only by proving the natural parent unfit or incompetent reach

further than necessary to resolve the issues presented to the courts in those cases. There was no evidence of special or extraordinary circumstances before the courts for consideration. See *In re Wakefield, supra; In re S., supra; Ex parte De Castro, supra; Bell v. Catholic Charities, supra.*

Only *Ex parte Archer, supra,* decided by the then Springfield Court of Appeals, involved the consideration of factors other than unfitness or incompetence. *Ex parte Archer* held merely that the fact the grandparent was in better financial condition to educate and rear the grandchild is insufficient to overcome presumption in favor of the natural parent. 253 S.W. at 1096[3–5]. One would be reading *Ex parte Archer* too broadly to say that it stands for the proposition that special or extraordinary circumstances other than unfitness or incompetence could never rebut the presumption. "There is no doctrine better settled than that the language used by a court in its opinion must be read and interpreted in the light of the facts and issues with which the court was concerned in the particular case." *Ex parte De Castro,* 190 S.W.2d at 952– 953[6].

Read in light of the facts and issue before the court, *Ex parte Archer* stands only for the proposition that the relative financial well-being of the third party, as compared to the financial condition of the natural parent, standing alone, will not deprive the natural parent of custody of the child.

The Missouri Supreme Court has never disavowed *In the Matter of Scarritt* or *State ex rel. Crockett v. Ellison.* *In re Wakefield, supra* did not cite or discuss either *Scarritt* or *Ellison.* All the other cases which seem to require parental unfitness or incompetence in order to rebut the presumption in favor of the natural parent have been Court of Appeals decisions. It is axiomatic that an intermediate appellate court cannot contravene the rulings of this state's Supreme Court. Consequently, *In the Matter of Scarritt* and *State ex rel. Crockett v. Ellison* are still controlling case law.

Many of the decisions which seem to eliminate factors other than parental unfit-

ness or incompetence have cited *In the Matter of Scarritt* or *State ex rel. Crockett v. Ellison.* See *In re S.,* 306 S.W.2d at 641[1]; *Ex parte De Castro,* 190 S.W.2d at 959[13]. Even *M.P.M. v. Williams, supra,* cites *Cox v. Carapella, supra,* which latter case also states that special circumstances other than unfitness or incompetence may rebut the presumption. 611 S.W.2d at 278.

From the citations to *Scarritt, Ellison* and *Carapella,* one may infer that *M.P.M. v. Williams* and its predecessors meant to adopt the rule in *Scarritt's* case, but inadvertently dropped that part of the rule which allows a court to consider special or extraordinary circumstances because that part of the rule was not relevant in *M.P.M. v. Williams* and its predecessors.

The polestar guiding the resolution of custody disputes is the best interests of the child. If rebuttal of the presumption in favor of the natural parent is limited to evidence of unfitness or incompetence of the parent, then there arises the danger that the best interests of the child may not be served due to the exclusion of other relevant factors. Although the court in *Frederick v. Frederick,* 617 S.W.2d 629 (Mo. App.1981), declined to consider factors other than unfitness or incompetence, the court nevertheless stated that the weight given to the biological relationship between parent and child was subordinate to the best interests of the child and that in an appropriate future case the court might consider other factors. Id. at 634, 637[7].

In most cases the natural parent, if not necessarily unfit, as in the case under review, should prevail. Custody should be awarded to third parties in preference to the natural parent only if in fact special and extraordinary reasons exist which leave no doubt that the best interests of the child dictate such a ruling.

The next issue is whether such special or extraordinary circumstances are present here. This court finds that such factors are present.

The child is a young lady, fourteen years old. The juvenile court found that she is of above average maturity. She said that she wanted to stay with her grandparents and that she is definitely opposed to living with the petitioner, her mother. During the nearly five years that she has been in respondents' care she has developed many friendships and ties to the community which she is reluctant to give up.

"Missouri courts have long acknowledged the right of the trial court to consider and give controlling weight to the wishes of a minor child provided the child is sufficiently mature to formulate and express a rational opinion and desire as to its custody." *E.C.S. v. J.D.L.,* 529 S.W.2d 423, 426[6, 7] (Mo.App.1975). If a trial court has the right to give controlling weight to the wishes of the child, then this appellate court, acting with the aid of a juvenile court's recommendation after a hearing, may also consider the child's wishes in arriving at its final decision.

Petitioner has not seen the child for approximately five years. During this period the strong ties between mother and daughter have attenuated. cf. *In the Matter of Scarritt,* 76 Mo. at 588. In addition, there is evidence that petitioner did not use her best efforts to locate her child during the period of the separation.

Respondents have raised the child with love and affection. They have provided her with a stable, wholesome environment, including a religious education. The respondents have the financial means to support the child.

This court is reluctant to uproot a fourteen year old from a wholesome environment and place her in surroundings of questionable character, especially when the child does not wish to leave her good home.

Petitioner, on the other hand, has not been a paragon of virtue. From the evidence at the hearing, the juvenile judge could have chosen to believe that petitioner had filed false claims for food stamps, abused drugs, threatened to commit suicide, beat the child when she had custody, bore a child out of wedlock, and operated a tavern which featured lewd male dancers. The misconduct proved is not sufficiently recent to permit this court to find petitioner an unfit parent when the juvenile division judge's recommendation is considered.

However, there was no evidence that petitioner has repented and consideration of her past conduct, along with the other special circumstances present, is sufficient reason for granting custody to respondents.

The capable juvenile judge of Jefferson County found the guardianship appointment to be invalid for lack of jurisdiction and recommended that K.K.M.'s best interests require that she remain in the custody of respondents. This court agrees.

The letters of guardianship granted to respondent on May 9, 1978 are declared null and void. The cause is transferred to the juvenile division of the Jefferson County Circuit Court which is directed to grant legal custody to respondents. The juvenile division may grant such visitation or temporary custody rights to petitioner as the court deems appropriate.

It is so ordered.

CRANDALL and SATZ, JJ., concur.