In the Interest of A.H., and
C.H., Minors.

R.H., Natural Father of A.H. and
C.H., Appellant,

v.

Wilbert LONG, Chief Juvenile
Officer, Respondent.

No. 46652.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 13, 1983.

William P. Chulick and David V. Uthoff, St. Louis, for appellant.

Richard O. Moore, Clayton, for respondent.

STEPHAN, Judge.

This appeal arises out of a dispositional hearing in juvenile court, in which the natural mother of two girls, seven and nine years of age, requested the court to relieve her of their custody. She had been awarded custody of the children at the time her marriage to the children's father was dissolved. At the dispositional hearing, the natural father sought and was denied custody of the children; custody was awarded to the Division of Family Services for further placement. The father appeals from this order of disposition. For the reasons set out below, we reverse and remand to the trial court for further proceedings.

On November 23, 1982, a hearing was held before a juvenile court referee in the City of St. Louis concerning the interests of the two minor children. All parties present, including the juvenile officer, natural father, and guardian ad litem, stipulated that the natural mother was requesting that the court relieve her of the care, custody and control of the children because she suffered from a nervous condition and feared she would harm them. It was further stipulated that, if a full evidentiary hearing were held, the allegations of the petition would be established by clear, cogent, and convincing evidence.

The natural father sought custody of the children and presented evidence concerning his desire and ability to care for them. The deputy juvenile officer recommended to the court that the care, custody and control of the children be granted to the Missouri Division of Family Services for subsequent foster or group home placement. The referee recommended taking jurisdiction of the children and the granting of legal custody to the Division of Family Services for placement, one child in a foster home and the other in a "group" home. The Circuit Court for the City of St. Louis adopted the referee's finding of jurisdiction and order of disposition. The natural father thereafter filed this appeal.

There was testimony adduced at the dispositional hearing through a clinical psychologist employed by the Juvenile Court that the natural father had some psychological problems including a history of alcoholism, which had been arrested for some four months prior to the hearing. During the course of her testimony, she used words such as "warm," "sensitive," and "intelligent" to describe the natural father. She also testified that "I cannot say at this point that he is an unfit father." The

natural father testified that he was unemployed at the time of the hearing because he had quit his $300 per week job in Texas to return to St. Louis when he learned that his former wife was attempting to relinquish custody of the children. He was, however, seeking employment in the St. Louis area. Although he had not ingested any alcoholic beverages for some four months prior to the hearing, he recognized that he had a drinking problem and planned to start attending meetings of an Alcoholics Anonymous group within the coming week. He was also planning to marry again a few days after the hearing; and his fiancee, who was employed as a nurse's assistant and with whom he had been living, testified that she wanted to have the children in their home and treat them as her own. None of this evidence was directly addressed by the referee in his recommendations or in the Circuit Court's order.

■ It has been clearly and unequivocally held in this State that, upon the death of a parent who has custody of a child by virtue of a dissolution decree, the surviving parent has "a primary right to custody of his children as against all the world ... He is clothed with a presumption of law that the best interests of his children are served in his custody as surviving parent, absent a showing of some special and extraordinary reason why he should not have custody." *Ex Parte Ray*, 573 S.W.2d 152, 155 (Mo.App.1978). Similarly, it was said in *In Interest of Dimmitt*, 560 S.W.2d 368, 371 (Mo.App.1977), "The right of natural parents to have custody of their minor children, unless their welfare is manifestly jeopardized by reason of parental unfitness, is considered inviolate and vigilantly guarded ... The relationship between natural parent and child is too sacred and runs too deep to be indifferently approached or lightly interfered with." As elucidated in *In Interest of K.K.M.*, 647 S.W.2d 886 (Mo. App.1983), the special and extraordinary circumstances authorizing custody of a child in a person or persons other than a surviving parent need not be completely limited to the unfitness of the surviving parent. Nevertheless, this court said in *K.K.M.*, at 892:

In most cases the natural parent, if not necessarily unfit, as in the case under review, should prevail. Custody should be awarded to third parties in preference to the natural parent only if in fact special and extraordinary reasons exist which leave no doubt that the best interests of the child dictate such a ruling.

The court went on to hold that the interests of the child in that case, a fourteen year old "young lady ... of above average maturity," would be best served by permitting her, in accordance with her wishes, to continue living with her paternal grandparents after the death of her father who had been awarded custody at the time of the dissolution of his marriage to her mother. In arriving at such conclusion, weight was accorded to the facts that her mother, the petitioner, had not seen the child in five years and had made no serious efforts to do so; that the ties between mother and daughter had attenuated; that she was then living in a "stable, wholesome environment;" and that living with her mother would place her in "surroundings of questionable character" where her mother had, among other things, abused drugs, beaten the child, and "operated a tavern which featured lewd male dancers."

■ In the instant case, the mother, by her positive efforts to have herself relieved of the duties of parental custody has, at least for the present, disqualified herself from such status as surely as if she had died. Here then, the natural father is entitled to a presumption of fitness as the custodian of the children. No weight was accorded to this presumption by the referee at the dispositional portion of the hearing; indeed, the referee specifically stated on the record while explaining his ruling, "I am not saying he's [appellant's] unfit ... I don't think anybody's knocked him down or dragged him down." Furthermore, as indicated above, there was positive evidence of his fitness to have custody. Although there was testimony from a deputy juvenile officer based on his review of information received from the "diagnostic and treatment center" of the Juvenile Court that the younger child suffered from a moderate degree of emotional disturbance, such opin-

ion could in no way rise to the level of certainty necessary to warrant the effective termination of appellant's parental rights.

Although the proceedings in the instant case are not necessarily governed by the statutory provisions established in termination matters, see §§ 211.447, RSMo (Supp. 1982), and 211.482, RSMo 1978, the drastic curtailment of the father's interest here nonetheless compels us to require that the court below make specific findings as to the father's fitness or whether "special and extraordinary reasons exist which leave no doubt that the best interests of [each] child dictate ... a ruling" that the natural father not have custody and, if such be the ruling, what those reasons are. *K.K.M.,* supra.

We therefore reverse and remand the case to the trial court for further proceedings consistent with the foregoing, and we trust such proceedings will be undertaken forthwith.

GAERTNER, P.J., and SMITH, J., concur.