In re the ADOPTION OF Z.T.H.

D.J.W. and P.M.S., Respondents,

v.

M.H., Appellant.

No. WD 50074.

Missouri Court of Appeals,
Western District.

Nov. 28, 1995.

Patrick Campbell, Kansas City, for appellant.

Penny Curtis, Lee's Summit, for respondents.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

This is a stepparent adoption case in which the natural father appeals the denial of his motion to set aside the adoption of his son, Z.T.H., by the child's stepfather. The natural father challenges the denial of his motion as a violation of his right to due process because he was improperly served. He also claims that his motion to set aside stated sufficient facts constituting a meritorious defense and good cause. Finally, the natural father claims that the commissioner did not have jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). We affirm.

The natural father and the mother, D.J.W., were divorced on or about July 25, 1990 in El Paso County, Colorado. Their son, Z.T.H., was born on October 29, 1987, and was the only child of the marriage. Initially, physical custody was granted to the mother, with reasonable visitation granted to the natural father.

Prior to August 14, 1991, the natural father resided at 380 Zang Street, Lakewood, Colorado with Ms. Siobhan Walter. The mother knew that the natural father was residing there. On August 14, 1991, the natural father was incarcerated for approximately 90 days for criminal trespass upon the property located at 380 Zang Street. Also on August 14, 1991, the mother filed a motion to modify custody with the District Court of El Paso County, Colorado. The mother mailed a copy of the motion to modify to the 380 Zang Street address.

On November 12, 1991, the natural father was released from the Jefferson County jail on probation. After approximately a month of homelessness, the natural father entered

the Salvation Army Rehabilitation Center and remained there until July 1992, except for an eleven-day hospital stay in December 1991.

On December 13, 1991, the District Court of El Paso County, Colorado granted sole legal and physical custody to the mother and granted leave to remove the child from Colorado. The mother was required to provide the natural father with her new address and phone number as soon as they were known. The natural father was restrained from going anywhere near the mother's address and from calling the mother. The natural father was to use the phone number solely for the purpose of calling his son. The court suspended the visitation of the natural father due to "problems [the natural father] has had in the past few months and due to the fact that he has not had contact with his son for almost a year...." A copy of this order was received by the natural father at the Salvation Army Rehabilitation Center.

In January 1992, the mother relocated to Missouri. Initially, she did not have telephone service at her new location. She contacted her Colorado attorney and instructed her to give her new address to the court registry. The court registry never received the mother's new address. The mother never gave her address directly to the natural father as she was unsure of his location.

Upon leaving the Salvation Army Rehabilitation Center in July 1992, the natural father resided at a motel for three weeks. He then lived in the basement of a home from August 1992, through November 1992. He then returned to the Zang Street address in Lakewood, Colorado, and resided with Ms. Walters until February 1993.

The natural father attempted to send a gift to Z.T.H. in October 1992. The natural father obtained the address from his mother. The gift was returned to the natural father's address with a note scribbled on it stating, "No one at this address." The mother denied ever receiving such a gift. The natural father took the gift upon its return to Z.T.H.'s maternal grandmother's home in Colorado. He left the gift on the doorstep with a note stating, "Do with this whatever you want." The grandmother did not inform Z.T.H.'s mother that she had received the gift until the mother inquired about the gift as a result of this litigation.

In January 1993, the mother and her husband, P.M.S., filed for stepparent adoption of Z.T.H. In an attempt to locate the natural father, the mother called the natural father's mother and sister who did not have his address. She also contacted directory assistance in Denver, Colorado, who did not have a listing for him. She called the Salvation Army Rehabilitation Center who refused to give her any information and would not confirm that the natural father had ever resided there. She called the courts in Colorado to try to find the natural father's probation officer. The Colorado courts told the mother that any information regarding the natural father was confidential.

The mother and stepfather then filed for adoption, alleging that the natural father had abandoned and neglected the child. An affidavit requesting service by publication was also filed stating that he had concealed himself so that he could not be personally served. The natural father was served by publication in a newspaper in Jackson County, Missouri, between January 28, 1993, and February 18, 1993. On July 21, 1993, the juvenile court commissioner found the natural father to be in default and entered a decree of adoption.

On or about July 31, 1993, the natural father filed a motion to modify the order suspending visitation with the District Court of El Paso County, Colorado. Thereafter, Colorado counsel for the mother advised the natural father that an adoption had been granted and his rights had been terminated as of July 21, 1993. On December 20, 1993, the natural father filed a motion to set aside the decree of adoption with the Family Court of Jackson County, Missouri. The juvenile court commissioner denied the motion to set aside. On September 1, 1994, the Family Court Judge of Jackson County confirmed the commissioner's judgment.

In his first point on appeal, the natural father argues that the trial court erred in denying his motion to set aside the decree of adoption because the service upon him by

publication was counter to Rule 54.17 and in violation of his right to due process.

■ Initially, we note that Missouri courts have recognized that "[b]ecause a natural parent's rights are valuable, both the statutes on adoption and service and general concepts of due process require that the parent be given an opportunity to defend against the termination of those rights." *G.M.D. v. M.D.*, 610 S.W.2d 305, 307 (Mo.App.1980). In the instant case, the trial court discussed the *G.M.D.* case and concluded that:

> The Court (in *G.M.D.*) held that the application for the order of publication was insufficient to support the order of publication, because there was no reference to any statutory ground for service by publication. Unlike the case of *G.M.D. v. M.D.*, the affidavit for service by publication in the instant cause does cite one of the statutory grounds. The affidavit is sufficient.

■ A fundamental requirement of due process is that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Court further stated that notice by means of publication satisfies the requirements of due process where a defendant is missing or the whereabouts of the defendant cannot be ascertained with due diligence. *Id.* at 317, 70 S.Ct. at 658.

■ Missouri courts have found that due process requires an honest and reasonable effort to find the adversary for personal service before the less adequate notice by publication may be sanctioned. *Burchett v. Burchett*, 572 S.W.2d 494, 502 (Mo.App.1978). Furthermore, the party seeking service must employ "the most reasonable means" to apprise the adversary of the action. *In the Interest of K.K.M.*, 647 S.W.2d 886, 889 (Mo. App.1983).

In *K.K.M.*, the court considered the propriety of service by publication in a guardianship proceeding. The minor child's paternal grandparents obtained service by publication upon the natural mother. The court found

this service was "defective or improper" because the grandparents knew or could have ascertained the natural mother's address. Specifically, the court held that the failure of the grandparents to use their son's friendship with the natural mother's brother to ascertain the natural mother's whereabouts constituted a failure to use the most reasonable means to apprise the natural mother of their action. As a result of this failure, the grandparents did not give the natural mother the notice required under the *Mullane* standard and therefore violated the mother's right to due process. The grandparents service by publication was "the equivalent of no service at all." *Id.*

■ In this case, as in *K.K.M.*, the issue is whether the party seeking service employed "the most reasonable means" to apprise the natural parent of the proceeding. Here, the mother telephoned the natural father's mother and sister, directory assistance in Denver, Colorado, the Salvation Army, and the courts in Colorado to try to find the natural father's probation officer. After informing the natural father's mother and sister of the planned adoption, the mother was unable to obtain his address. Directory assistance had no listing for the natural father. The Salvation Army refused to give the mother any information and would not confirm that the natural father had ever resided there. Similarly, the Colorado courts told the mother that any information regarding the natural father was confidential.

The natural father argues that these efforts by the mother were not the most reasonable means of giving him notice of the adoption proceedings. The natural father contends that she should have mailed notice to his previous Zang Street address, which had been used by her attorney over a year before. Nevertheless, the record reveals that the mother had previously sent mail to Zang Street address which was returned and the Salvation Army address was the last known address. The mother had no reason to believe that the natural father had reconciled his differences with Ms. Walters after she had had him removed by the police from the Zang Street address. Furthermore, the

mother had been informed by the natural father's sister that Ms. Walters had moved.

The mother's inquiries with the natural father's family, directory assistance, the Salvation Army, and the Colorado courts demonstrate an honest and reasonable effort to notify the natural father. We find that the mother used the most reasonable means, under all of the circumstances, to provide notice to the natural father. Point denied.

In his next point, the natural father contends that the trial court erred in refusing to set aside the default decree of adoption. Under Rule 74.05, a default judgment may be set aside upon a motion stating facts constituting a meritorious defense and for good cause shown. In this case, the court ruled that the natural father had not demonstrated an arguable theory of a meritorious defense, and therefore did not discuss the issue of good cause.

■ The trial court has the discretion to set aside a default judgment and the trial court's decision in that regard will generally not be interfered with unless the record convincingly indicates an abuse of discretion. *Jeffries v. Jeffries,* 840 S.W.2d 291, 293 (Mo. App.1992). Under the rule, "[g]ood cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." Rule 74.05(d).

■ Good cause is not a disputed issue in this case. The mother obtained service by publication in a Jackson County, Missouri newspaper between January 28, 1993, and February 18, 1993. The adoption decree was entered July 21, 1993. The natural father as not apprised of the adoption decree until August, 1993, when he filed a motion for visitation with the District Court of El Paso County, Colorado.

In response to the Colorado motion, the mother advised the El Paso County court that the natural father's parental rights were terminated pursuant to the Missouri trial court's decree of adoption. The natural father's conduct in not appearing for the Missouri trial court's proceedings was not intentionally or recklessly designed to impede the judicial process. Good cause existed under

Rule 74.05 for the trial court to set aside the default decree of adoption.

■ In addition to good cause, Rule 74.05 requires that the party seeking to set aside the judgment present a meritorious defense. The defense does not have to be set forth in detail, but must demonstrate an arguable theory that would defeat the adversary's claim. *McClelland v. Progressive Casualty Insurance Co.,* 790 S.W.2d 490 (Mo. App.1990). To present a meritorious defense in this case, the natural father must have advanced an arguable theory that he did not wilfully abandon the child or, for the six months immediately prior to the filing of the petition for adoption, that he did not willfully, substantially and continuously neglect to provide the child with necessary care and protection. The trial court concluded that the natural father was unable to demonstrate facts constituting a meritorious defense to the claim that he had willfully, substantially and continuously neglected his child.

■ A motion to set aside a default judgment is left to the sound discretion of the trial court, the exercise of which will not be interfered with on appeal unless the record demonstrates an abuse of that discretion. *Hughes v. Christian,* 586 S.W.2d 788, 790 (Mo.App.1979). The law favors a trial on the merits but also defends the integrity of the legal process and procedural rules and therefore does not sanction the disregard thereof. *Sprung v. Negwer Materials, Inc.,* 775 S.W.2d 97, 100 (Mo. banc 1989). The discretion not to set aside a default judgment is a good deal narrower than the discretion to set one aside, with the result that appellate courts are more likely to interfere when the trial court has denied such a request. *Boatmen's First Nat'l Bank v. Krider,* 844 S.W.2d 10, 12 (Mo.App.1992).

■ Under Missouri law, neglect is a failure to fulfill the duty imposed upon the parent by law and by conscience. *G.S.M. v. T.H.B.,* 786 S.W.2d 898, 900 (Mo.App.1990). In stepparent adoptions, neglect is frequently demonstrated by failure to provide support, without just cause or excuse, whether ordered by judicial decree or not. *Id.* If the natural parent fails to provide support, he or

she must then show why this failure is not willful. *Id.* at 901.

■ In this case, the natural father has not paid the child support ordered by the Colorado courts. He has paid no voluntary child support since the Colorado custody decree[1] and he paid no support during the six months immediately proceeding the filing of the adoption petition.

The natural father argues that he could not afford to pay any child support. Nevertheless, he did pay $100.00 a month toward a civil judgment and $150.00 a month for a car. The natural father's stated justification for failing to support the child was that he had to think of himself and get himself together before he could think of his child.

■ The natural father next contends that he could not provide support because the mother failed to provide her address and phone number to the court registry as required by Colorado court order of December 13, 1991. Of course, this argument does not relieve the natural father from his obligation to make child support payments to the court registry fund as required by court order. He did not know that the court registry did not have the mother's address until July 1992. He did not need the mother's address because the support payments were to be forwarded to her by the court registry fund.

The natural father also contends that his delivery of a gift to the child's maternal grandmother constituted an attempt to support the child. This argument, however, does not present an arguable theory that would defeat the mother's claim that the natural father had substantially neglected the child.

Under the facts of this case, the natural father has failed to advance an arguable theory that he did not willfully, substantially and continuously neglect his child in the six months immediately prior to the adoption. Point denied.

■ In his final point, the natural father claims the trial court lacked subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), as adopted in Missouri under RSMo §§ 452.440 to 452.550 (1986). The natural father does not dispute Missouri is the home state of the child and was the home state at the time that the petition for adoption was filed. Rather, he argues that the trial court did not have jurisdiction or should have declined jurisdiction due to alleged misconduct by the mother in failing to provide the natural father with her address and phone number, although ordered to do so by the Colorado court.

The "clean hands" provision of the UCCJA allows a court to decline to exercise jurisdiction if a petitioner has wrongfully taken the child from another state or has engaged in similar reprehensible conduct. RSMo § 452.475. Here, the mother's failure to provide her address was not similar reprehensible conduct. She was unable to forward her address to the natural father because she was unable to locate him. She did give her address to her Colorado attorney and instructed her to give it to the Colorado court registry. Apparently, the attorney failed to follow through and give the information to Colorado court registry. She also gave her address to the natural father's mother and sister. The trial court was not required to decline to exercise jurisdiction based on the allegation of the mother's unclean hands.

The "clean hands" provision does not affect a court's subject matter jurisdiction but only its decision whether or not it should exercise jurisdiction. *State ex rel. Rashid v. Drumm*, 824 S.W.2d 497, 501 (Mo.App.1992). Moreover, the clean hands provision does not supersede the best interests of the child. *Id.* at 502. The paramount issue is the welfare of the child rather than the tactics of the parents. *Id.* The trial court concluded that in the best interests of the child, the adoption decree should not be set aside. We do not disturb this decision.

All Concur.

---

1. The natural father's tax refunds for 1991 and 1992 were withheld by the state of Colorado.