**Leo P. WILLIAMS, Respondent,**

v.

**Dorothy J. WILLIAMS, Appellant.**

**No. WD 52656.**

Missouri Court of Appeals,
Western District.

Submitted March 13, 1997.

Decided Aug. 26, 1997.

---

Susan F. Robertson, Columbia, for appellant.

Gary W. Smith, Sedalia, for respondent.

Before BRECKENRIDGE, P.J., and SMART and LAURA DENVIR STITH, JJ.

SMART, Judge.

This is a dissolution of marriage case in which the trial court's jurisdiction was based on service by publication. Dorothy J. Williams contends that the decree issued by the Circuit Court of Pettis County in 1985 which purported to dissolve her marriage to Leo P. Williams is void because there was no honest and reasonable effort to obtain personal service on her. Mrs. Williams contends that the trial court erred in denying her 1996 motion to declare the 1985 decree void. Because the law requires that there be a substantial basis in the evidence to support a finding that plaintiff made an honest and reasonable effort to personally serve the defendant, we reverse the judgment of the trial court.

Leo and Dorothy Williams were married January 11, 1952. Leo retired from the United States Navy in 1962 on full disability due to a training accident that involved exposure to toxic gas. This exposure caused him chronic lung disease and other complications. Over the years his health gradually deteriorated and he became increasingly dependent. Leo and Dorothy divorced in 1969, and remarried in 1970. In 1980, Leo and Dorothy separated, and Leo moved to Colorado, where he had family who helped take care of

him. Ultimately, the relatives in Colorado could no longer care for Leo. Leo's sister-in-law called Dorothy and insisted that Dorothy come to get Leo and take responsibility for his care. Dorothy was living in Sedalia, Pettis County, Missouri. The children of Leo and Dorothy, one of whom was still a minor at the time Leo was brought back to Missouri, also lived in the Sedalia area. Dorothy quit her job and drew her civil service retirement money in order to have funds with which to support herself while she and her daughter cared for Leo. Leo lived with Dorothy from December, 1980, until April, 1982, when Leo needed hospitalization. Dorothy took Leo to the Veterans Administration Hospital in Kansas City. The doctors informed Leo and Dorothy that Leo's condition was terminal. Leo was moved to a nursing home in Kansas City in order to receive care. Leo had virtually no personal property, maintaining everything he owned in a foot locker. Shortly thereafter, he was transferred to a nursing home associated with the VA Hospital in Columbia, Missouri, which was about 50 miles from Dorothy and the children. Dorothy and the children visited him regularly at the nursing home. After Leo and Dorothy had certain disagreements, Leo barred Dorothy from his room at the nursing home. Dorothy, who was seeking employment, moved to California and then to Texas. She lived in Texas until August, 1985.

On March 26, 1985, Leo filed a petition for dissolution of marriage. The petition was filed in Pettis County, in which Sedalia is located. In his petition, Leo stated that "Petitioner is and has been a resident of the State of Missouri for more than ninety (90) days next preceding the filing of this petition, and now resides at the Harry S. Truman Memorial Hospital, Columbia, Missouri." Columbia, Missouri, is in Boone County. Leo further stated that Dorothy was a resident of Lee's Summit, Jackson County, Missouri. He directed service of process at the address of Dorothy's brother in Lee's Summit. A non est return was filed April 29, 1985. Leo's attorney requested service by publication, on May 2, 1985, reciting in the affidavit that Dorothy's whereabouts were unknown to Mr. Williams. Notice was duly published in the Sedalia newspaper during May, 1985.

The case proceeded to hearing on September 23, 1985. Dorothy had not answered, and was in default. Leo could not attend the hearing because of his disabled condition. Edwin Strubinger, a social worker at the nursing home, appeared and testified that Leo condition was such that Leo could not appear in court personally. Mr. Strubinger testified that Leo's illness did not affect Leo's mental capacity or decision making. Mr. Strubinger offered no testimony as to the domicile of either party or any attempts made to locate Dorothy. Leo's testimony was presented by deposition. In that deposition, Leo testified that he lived in Columbia. When asked the question "to the best of your knowledge, where does Dorothy Williams reside?", Mr. Williams answered: "Texas." There was no further discussion as to her whereabouts, or as to the extent of Mr. Williams' knowledge of her whereabouts.

There was no testimony that Leo intended to return to Sedalia, or that he had any reasonable hope that he would ever leave the VA hospital nursing home. There was no testimony that there had been any reasonable efforts to locate Dorothy or to see that she had been notified of the pendency of this proceeding. There was also no discussion in the deposition about the reason for service by publication. The trial court entered an order dissolving the marriage.

Leo died on January 17, 1986. Shortly thereafter, Dorothy discovered that, because of the dissolution, she could not receive widow's benefits from the Veterans Administration.

Almost 10 years after Leo's death, on December 1, 1995, Dorothy filed a motion to declare the judgment of dissolution void because of improper venue, inadequate service of process and lack of personal jurisdiction. The trial court appointed an attorney as "defendant ad litem" for Leo Williams. The trial court conducted a hearing on the motion. The trial court heard testimony from Dorothy, from the children of Leo and Dorothy, and from Mr. Strubinger, the social worker who had testified at the time of the

dissolution. The trial judge found, based on the testimony of Mr. Strubinger, that Leo had an intention to return to Pettis County, and that venue was therefore proper in Pettis County. As for the issue of service of process, the trial court noted that Leo's attorney swore in affidavit that Leo did not know the whereabouts of Dorothy. The trial court also noted that, according to the record in a 1985 criminal case in which Dorothy was the defendant, Dorothy stated she was a resident of Sedalia on February 19, 1985. The trial court also found that family members, who testified that Dorothy was living in Waco, Texas, in late January, 1984, were either confused or mistaken in the assumption that their mother was living in Waco, Texas, at that time. The trial court found that the family members, who claimed in the hearing that they could and would have informed Leo of the whereabouts of Dorothy if they had been asked, were unaware of her residence up to and including April, 1984. The court therefore found that there was a reasonable basis for service by publication. The court found that there was no reason to believe that Leo knew the whereabouts of Dorothy when he filed his petition. The court found that Leo's attorney's sworn publication request had not been adequately impeached. The court also noted that Mr. Strubinger's testimony indicated that he had had a conversation with Dorothy in 1985 in which he had mentioned to Dorothy the fact that Leo was pursuing a divorce. The trial court found that venue was proper, that there was no showing that service of process was improper, that the court had jurisdiction over Dorothy at the time of the decree, and consequently denied Dorothy's motion.

### STANDARD OF REVIEW

In a court-tried case, the trial court's judgment will be affirmed unless it is against the weight of the evidence, is not supported by substantial evidence or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We give the trial court due regard for having the opportunity to judge the credibility of witnesses. *Central States Christian Endeavors Ass'n v. Nelson,* 898 S.W.2d 547, 548 (Mo. banc 1995). The power of an appeals court to set aside a decree is exercised with caution. *Vangundy v. Vangundy,* 937 S.W.2d 228, 231 (Mo.App. 1996). We will set aside the decision of the trial court only where we are firmly convinced that the judgment of the trial court is wrong. *Lenger v. Lenger,* 939 S.W.2d 11, 13 (Mo.App.1997).

### SERVICE BY PUBLICATION

██ "A proceeding for dissolution of marriage—as was the predecessor suit for divorce—is a statutory action sui generis, a remedy at law determined on principles of equity." *In re Marriage of Breen,* 560 S.W.2d 358, 361 (Mo.App.1977). Jurisdiction to hear and determine such actions derives from our statutes; there is no common-law jurisdiction for dissolution proceedings. *London v. London,* 826 S.W.2d 30, 32 (Mo. App.1992). Statutory provisions are, therefore, to be strictly construed on questions of jurisdiction. *Id.* Proper service must be accomplished before a court acquires jurisdiction over the person or the property of a defendant, *Metmor Fin., Inc. v. Leggett,* 787 S.W.2d 733, 735 (Mo.App.1989), absent a general appearance or other waiver. *In re Marriage of Johnson,* 948 S.W.2d 148, 151 (Mo. App. E.D. 1997). Without proper service, any judgment rendered over a party is void. *Metmor,* 787 S.W.2d at 735.

██ Section 452.310.1, RSMo 1994 provides, " All proceedings under sections 452.300 to 452.415 are commenced in the manner provided by the rules of the supreme court." Subsection 4 of that statute states specifically, "The other party must be served in the manner provided by the rules of civil procedure and applicable court rules...."

At the time the petition was filed, requirements for service by publication were set out in Rule 54.17, which provided, in pertinent part:

(a) Service by publication shall be by notice published by order of the court or clerk thereof.

(b) Such order shall issue when the party desiring service by publication files a statement verified by him or by a person on his behalf, stating (1) that one or more of the persons to be served are unborn or

their names are unknown to the party desiring service by publication or facts showing why service cannot be obtained under Rule 54.13, Rule 54.14 or Rule 54.16, and (2) if known, the address of the party to be served or in lieu thereof a statement that said address is unknown. It shall be sufficient to name or describe unborn or unknown parties as the heirs, grantees or successors of the person to whom the property to be affected was last known to have been transferred.

When a judgment has been obtained upon constructive notice, strict compliance with statute is required. *Skalecki v. Small*, 832 S.W.2d 954, 956 (Mo.App.1992). Compliance with Rule 54.20(e), as with former Rule 54.17, requires that an "honest and reasonable effort" be made to locate a defendant for personal service before service by publication may be utilized. *Metmor*, 787 S.W.2d at 736. Due process requires that the notice must be reasonably calculated to afford notice of the pendency of the action. *In the Interest of K.K.M.*, 647 S.W.2d 886, 889 (Mo.App.1983). The party seeking service is charged with using "the most reasonable means" to notify his adversary concerning the action. *Id.* In determining whether an "honest and reasonable effort" had been made to locate Mrs. Williams, there must be "a substantial basis in the evidence for such a finding." *Metmor*, 787 S.W.2d at 736.

■ The findings made by the trial court focus on Mrs. Williams' whereabouts in 1984, which was before the relevant time period. The relevant time period in this case is from March 1985 through September 1985. The trial court's findings as to the credibility of the testimony given by Mrs. Williams' family members are based upon the family's knowledge of Mrs. Williams' whereabouts in 1984. The evidence as to Mrs. Williams' whereabouts during the critical period shows that Mrs. Williams was in Texas. The evidence was uncontradicted that during that time she maintained contact with her daughters, who were in contact with Leo. Whether Mrs.

Williams knew that a divorce action was planned or was pending is irrelevant because Mrs. Williams was never personally served and never appeared in the action.[1] Mr. Strubinger's testimony established that he knew she was in Texas during the critical period. The deposition testimony also shows that Leo knew Dorothy was in Texas. Any "honest and reasonable" effort by Mr. Williams to locate Mrs. Williams should have included at a minimum a consultation with the daughters or with Mr. Strubinger as to Dorothy's precise location. Instead, the testimony of the children indicates that he never asked the children about Dorothy's address. There is also no evidence he ever asked Mr. Strubinger to attempt to locate Dorothy. We also find curious the attempt to personally serve Mrs. Williams at her brother's home in Lee's Summit. There is no indication in the record that Mrs. Williams ever resided there or that anyone had reason to believe she could be located there. Perhaps, at one point, Leo understood Dorothy was staying there. The request for service by publication makes no reference to the attempt to serve Dorothy in Lee's Summit. Although it is possible that an "honest and reasonable effort" was made to locate Dorothy, the record does not contain substantial evidence that such an effort was made. While the affidavit of Leo's attorney is arguably entitled to some deference, that deference is minimal in view of the fact that it was not based upon personal knowledge (it was the attorney's affidavit that Leo did not know Dorothy's whereabouts), and in view of the fact that the request made no reference to any efforts to inquire as to her whereabouts. Although the trial court was not required to believe the testimony of Dorothy's children, there was no affirmative testimony by anyone, and no affidavit, that Leo ever made inquiry of Dorothy's address. Because of Mr. Strubinger's testimony as to the mention of the intended divorce in a telephone call he had with Dorothy, the trial court concluded that Dorothy had notice that a divorce proceeding was in process. This,

1. The record fails to reveal why Mr. Strubinger talked with Dorothy in 1985. We do not know whether the call was placed at the initiative of Mr. Williams, and we do not know the purpose of the call. Nor do we know whether the conversation occurred before the divorce case was filed, or while it was pending. In short, it is not clear that the purpose was to notify Dorothy of the divorce.

however, is not the same thing as substantial evidence that there was an "honest and reasonable effort" to personally serve process on Dorothy.

In the case of *In re Adoption of Z.T.H.*, 910 S.W.2d 830, 834 (Mo.App.1995), this court looked at the issue of whether the party who sought service employed "the most reasonable means" of informing a natural parent of an adoption proceeding. We found the natural mother's efforts to be reasonable where "the mother telephoned the natural father's mother and sister, directory assistance in Denver, Colorado, the Salvation Army, and the courts in Colorado to try to find the natural father's probation officer." *Id.*

By contrast, in *K.K.M.*, the court examined service by publication in a guardianship proceeding. The minor child's paternal grandparents obtained service by publication upon the child's natural mother. The court stated that the service was faulty and, hence, no service at all because the grandparents did not use their son's friendship with the natural mother's brother to ascertain her whereabouts. *K.K.M.*, 647 S.W.2d at 889. The court held that this omission constituted "a failure to employ the most reasonable means to apprise petitioner of their action." *Id.*

Similarly, in *Metmor*, the court held:

[T]he names of the appellants—the parties to be served—were certainly known to respondent. The only evidence of respondent's attempts to locate appellants was a statement by respondent's counsel at the hearing on appellant's motion to set aside the judgment. Respondent's counsel stated that they made "good faith, diligent efforts to locate them." There was no evidence presented at the hearing on the motion, no evidence contained in respondent's verified affidavit for service by publication, nor any other evidence anywhere else in the record indicating that appellants' addresses could not be located nor what actions respondent took in this regard. We cannot say that there is a substantial basis on which to find that respondent made an honest and reasonable effort to personally serve appellants. Service by publication was therefore inadequate and

the court did not have personal jurisdiction over appellants.

787 S.W.2d at 736.

■ In this case, we find there was not a substantial basis on which to find that Leo made an honest and reasonable effort to serve Dorothy. The court's ruling on Dorothy's motion was against the weight of the evidence. Although a trial court can proceed in matters affecting status (such as the marriage itself) without personal jurisdiction, an action in rem does require that there be compliance with the rules relating to service of process and proper notice. *In re Marriage of Southard*, 733 S.W.2d 867, 868 (Mo. App.1987). Because there was no sufficient attempt to serve Mrs. Williams, the court acquired no jurisdiction. *Id.* Nor did Mrs. Williams waive her right to proper service: she did not appear at the hearing and was never before the court.

There is no specific time limit on a motion asking for relief from a void judgment. *Williams v. Williams*, 932 S.W.2d 904, 905 (Mo.App.1996). "A judgment which is void from its inception is a nullity and is not subject to the 'reasonable time' requirement of Rule 74.06(c)." *Id.* at 905.

■ Because the trial court had no jurisdiction to decide the matters before it, the judgment is considered *corum non judice* and must be set aside. *Southard*, 733 S.W.2d at 869. In view of our determination on the issue of jurisdiction, we need not address the issue of venue raised by appellant.

The judgment of dissolution is vacated.

BRECKENRIDGE, P.J., and LAURA DENVIR STITH, J., concur.