FOR APPELLANTS: John Richard Bird, 906 Olive Street, Suite 1115, St. Louis, Missouri 63101, Cynthia Mary Smith, P.O. Box 190288, St. Louis, Missouri 63119.
FOR RESPONDENT: Kathleen Collins Dubois, 105 South Central Avenue, Suite 555, Clayton, Missouri 63105, Sarah Elise Schwartz, 4232 Forest Park Avenue, St. Louis, Missouri 63108.
James M. Dowd, Presiding Judge *820 This adoption case took a tortuous route to reach us. The trial court struggled to dispose of appellants A.R.V. (Mother) and D.M.V.'s (Stepfather) petition to adopt G.W.J. (Child) through no fewer than five separate rulings entered in the matter over a two-and-a-half year period. In February 2015, the court entered a default judgment granting the adoption which resulted in the termination of respondent Father's parental rights. In its October 2015 judgment, the court granted Father's motion to set aside the default judgment. In May 2016, the court held a trial on the petition and entered a new judgment again granting the adoption. After Father timely filed his motion for new trial or to amend the judgment, the court granted Father's motion in part. And, finally, the court's September 2017 judgment denied the petition for adoption leaving intact Father's parental rights.
On appeal, Appellants raise five points which challenge two of the court's judgments: (1) the October 2015 judgment that set aside the February 2015 default judgment, and (2) the September 2017 judgment denying Appellants' petition for adoption.[1] In their first point, Appellants claim that the court erred in setting aside the February 2015 default judgment because Father failed under Rule 74.05[2] to state facts constituting a meritorious defense and failed to show good cause to excuse the default. In their second point, Appellants contend the trial court lacked jurisdiction to enter the September 2017 judgment because the court lost jurisdiction over the case when by operation of Rule 78.06[3] the May 18, 2016 judgment became final on September 13, 2016 after the court failed to rule within 90 days on Father's June 15, 2016 motion for new trial. Finally, in their remaining three points, Appellants argue that the court erred in failing to find that Father willfully abandoned and willfully, substantially, and continuously neglected Child, and that the adoption was in Child's best interests.
For the reasons explained in detail below, we dismiss the appeal of the October 2015 judgment that set aside the February 2015 default judgment and we affirm the court's September 2017 judgment.
Factual and Procedural Background
Child was born August 11, 2008, to Mother and Father, who at the time were an unmarried couple residing together at a residence on Turf Court in St. Louis County. Two years earlier, the Social Security Administration had declared Father totally disabled due to a spinal injury and granted him Social Security Disability Insurance (SSDI) benefits pursuant to Title 42 of the Social Security Act. Upon Child's birth, the Social Security Administration also began paying benefits to Child as a dependent of a disabled wage earner, which *821 benefits at all relevant times Child has continued to receive.
In November 2008, after Mother obtained an ex parte order of protection against Father, they separated and Father relocated to a residence on Indiana Avenue in the City of St. Louis. The order prohibited Father from contacting Mother until May 2009.
In April 2009, Mother obtained a paternity judgment that awarded her full legal and physical custody of Child; stated that in lieu of paying child support, Father could continue to provide Child with SSDI dependent benefits so long as they amounted to at least $488.00 per month; required that Mother and Father keep one another apprised at all times of their addresses and telephone numbers; and ordered that Father was entitled to limited supervised visitation with Child, so long as he scheduled those visits through Mother's attorney.
In August 2009, Father moved to Colorado. He exercised visitation with Child "once or twice" before leaving, but he has not had visitation with Child since. For her part, in July 2010, Mother married Stepfather and he began to live with her and Child at the Turf Court residence. Child has lived with both Appellants since then. Since Father did not provide Mother with his address in Colorado and Mother testified she did not know how to contact him, Father did not learn of these developments at the time.
In February 2010, Father suffered a stroke that paralyzed the left side of his body and rendered him unable to speak for six months. Then, in February 2012, Father suffered a brain aneurysm and was institutionalized at a state mental hospital. Father said that when he was first admitted, he did not know his identity, his location, the date, or "anything." When Father was released in late 2012, he moved back to the St. Louis area, where in 2013 he underwent a surgical procedure to treat complications of his aneurysm.
In January 2012, Mother, Stepfather, and Child moved from the Turf Court residence without informing Father. As late as January 2015, Father still had not learned that they had moved-evidenced by a letter he sent at that time to the Turf Court residence requesting visitation with Child.
In September 2014, Appellants filed their petition to adopt Child which would have the effect of terminating Father's parental rights. Appellants claimed that Father's consent was not required because he had willfully abandoned and willfully, substantially, and continuously neglected Child. At the time the petition was filed, Father had been living in a residence in Granite City, Illinois for at least the previous six months. Nevertheless, a special process server attested that serving Father was impossible because he had moved from his last known address. On that basis, the court issued on November 17, 2014 an order allowing service by publication.[4]
*822 On February 4, 2015, after Father failed to appear or to answer the petition, the court entered judgment by default granting the adoption. Father, unaware of the adoption litigation, had for several weeks prior to the entry of the default judgment attempted to contact Mother to request visitation. In January 2015, he sought the assistance of a non-profit agency known as March Mediation to locate Mother, but March Mediation was unable to find her. Father also contacted Mother's former attorney, the Social Security Administration, and mutual acquaintances, none of whom was able to assist him in locating Mother.
On January 20, 2015, Father sent the letter mentioned above to Mother at the Turf Court residence, but it was returned undelivered because she and Stepfather had moved. Father then turned to the St. Louis County Police Department which helped him locate Mother's new address. He hand-delivered the letter to that address at some point after February 4, 2015, but received no response. On February 19, 2015, Father filed a family access motion in the trial court. At the hearing on that motion, Father learned that weeks earlier his parental rights had been terminated and his son adopted.
In September 2015, Father filed a motion to set aside the default judgment, asserting good cause and a meritorious defense including the assertion that Appellants had not properly served or attempted to serve him and that he had thus been unjustly denied an opportunity to appear and contest the adoption. Father's motion was heard and granted in October 2015. The court set the matter for trial on the merits which took place in May 2016, after which the court entered a new judgment granting the petition for adoption.
On Father's motion the court stayed the adoption, and in June 2016 Father filed a motion for new trial or to amend the judgment, contending that there was inadequate proof of abandonment or neglect before the court. Father argued, inter alia , that he had attempted to contact Child and had supported him by continuously providing him with no less than $488 per month in SSDI benefits.
The court in a June 2016 order declared that Father's motion for new trial or to amend the judgment was "granted in part," and that the "[r]elevant issues [were] abandonment and Respondent's ability to care." A year later, in May 2017, Father filed a motion for summary judgment to which Appellants did not respond. And in August 2017, the court entered its judgment denying Appellants' petition for adoption. Appellants filed a motion to amend the judgment or for a new trial and after a hearing on the motion, the court on September 21, 2017 entered its amended judgment again denying the petition for adoption.
This appeal follows.
Standard of Review
Our standard of review of a bench-tried case is derived from Murphy v. Carron, 536 S.W.2d 30, 32 (Mo.banc 1976). We sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We exercise our *823 power to set aside the judgment on the ground that it is against the weight of the evidence with particular caution and not without a firm belief that the judgment is wrong. Id. We view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order. In re T.S.D. , 419 S.W.3d 887, 891 (Mo.App.E.D. 2014). And we accept as true the evidence and permissible inferences favorable to the judgment and disregard all contrary evidence and inferences. Id.
Discussion
I. Appeal of the October 14, 2015 judgment was untimely.
In their first point on appeal, Appellants challenge the October 2015 judgment that set aside the February 2015 default judgment of adoption, claiming that Father failed to state facts constituting a meritorious defense and failed to show good cause to excuse the default.
We cannot get to the merits of this point until we determine, as we must, whether we have jurisdiction. Brown v. Lawless , 230 S.W.3d 343, 344 (Mo.App.E.D. 2007). That question centers on whether the court's October 2015 judgment was a final, appealable judgment that Appellants were required to appeal at that time in order to preserve this point that the court erred in setting aside the default judgment. We find that because a motion to set aside a default judgment is an independent action the resolution of which results in an independent judgment-not an interlocutory, unappealable order-Appellants should have appealed the October 2015 judgment within the time allowed by Rule 81.04 and the failure to do so means they have waived this point.
We reject Appellants' argument that the October 2015 judgment was by definition interlocutory and not a final judgment because it set aside a default judgment with the anticipation that further adoption litigation would take place. Missouri law is clear that Father's motion to set aside the February 2015 default judgment was an independent action that resulted in an independent judgment entered on October 14, 2015, not an interlocutory order. See In re Marriage of Coonts, 190 S.W.3d 590, 603-04 (Mo.App.S.D. 2006) (en banc) (holding that a motion to set aside a default judgment under Rule 74.05(d) is an independent action, and not an after-trial motion, regardless of when it is filed, and that it requires an independent judgment). And this judgment, for its purposes, was final. See O'Neill v. O'Neill , 864 S.W.2d 7, 8 (Mo.App.E.D. 1993) (noting that a judgment is final when it "disposes of all the issues for all parties in the case and leaves nothing for future determination"). The record shows no failure of the October 2015 judgment to completely dispose of the issues that arose as part of Father's independent action to set aside the default judgment.
It follows therefore that Appellants were required to appeal this final judgment and the failure to do so means that their appeal here of the October 2015 judgment is untimely. Rule 81.04(a) provides in pertinent part:
If an appeal is permitted by law from a trial court, a party may appeal from a judgment, decree, or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final.
A judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed. Rule 81.05(a). Therefore, here, because Appellants filed no after-trial motion challenging *824 the October 2015 judgment, the judgment became final in November 2015, and Appellants' notice of appeal, filed in September 2017, was untimely filed.
Our jurisdiction depends on the timely filing of a notice of appeal and, lacking that, out-only permissible action is to dismiss the appeal. Miller v. City of St. Louis , 140 S.W.3d 602, 603 (Mo.App.E.D. 2004) (citing Moore ex rel. Moore v. Bi-State Dev. Agency , 87 S.W.3d 279, 296 (Mo.App.E.D.2002) ). Therefore, we cannot review the merits of Appellants' untimely appeal of the October 2015 judgment and must dismiss it.
II. The trial court did not lack jurisdiction to enter the September 21, 2017 judgment.
In their second point on appeal, Appellants contend the trial court no longer had jurisdiction when it entered its September 21, 2017 judgment. Appellants assert that the court lost jurisdiction on September 13, 2016 by operation of Rule 78.06 when it failed to rule within 90 days on Father's June 15, 2016 motion for new trial. They argue that while the court's June 28, 2016 order purported to grant in part Father's motion for new trial, it did not effectively rule on that motion, so the May 18, 2016 judgment of adoption became final on September 13, 2016 and the court lacked jurisdiction to issue its September 21, 2017 judgment. We disagree and find that the September 21, 2017 judgment was properly entered.
Rule 78.01 clearly provided the court with the authority to issue its June 2016 order and its September 2017 judgment. The rule provides:
The court may grant a new trial of any issue upon good cause shown. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or master. And on a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment.
(emphasis added); see also Zibung v. Union Pac. R. Co., 776 S.W.2d 4, 6 (Mo. banc 1989).
We find that by its June 2016 order the court within 90 days exercised its authority pursuant to Rule 78.01 to open the May 2016 judgment of adoption with the intention of amending its findings of fact and entering a new judgment, and that the court's September 2017 judgment accomplished this aim.
The June 2016 order provides in all relevant parts:
[Father's] Motion for New Trial or in the Alternative to Amend the Judgment called and heard, and granted in part. Transcript of trial proceedings of May 10, 2016 shall be prepared ... and provided to the parties. All evidence received through discovery shall be provided to all parties. [Father] granted leave to request findings of fact and conclusions of law out of time.... Relevant issues are abandonment and [Father]'s ability to care.
This order effectively opened the May 2016 judgment of adoption as contemplated by Rule 78.01 with the intention of amending or making new findings of fact and entering a new judgment in the case. Accordingly, we hold that the June 2016 order was sufficient to rule on Father's motion for new trial[5] and thus the September *825 2017 judgment was properly entered.
III. The September 21, 2017 judgment was supported by substantial evidence and was not against the weight of the evidence.
We now turn to our review of the merits of the court's fifth and final ruling in the matter-its September 21, 2017 judgment. Appellants argue that the trial court erred in failing to find that Father willfully abandoned and willfully, substantially, and continuously neglected Child, and that the adoption was in Child's best interests. We disagree.
We first note that courts have long recognized that the relationship between a natural parent and child is constitutionally protected. See, e.g. Stanley v. Illinois , 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ; In re K.A.W., 133 S.W.3d 1, 12 (Mo.banc 2004). This relationship is a fundamental right and liberty interest and thus is entitled to protections under the Due Process Clause of the Fourteenth Amendment. Troxel v. Granville , 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the interest of parents in the care, custody, and control of their children, is perhaps the oldest of fundamental liberty interests recognized by the United States Supreme Court. Id.
In Stanley , 405 U.S. at 651, 92 S.Ct. 1208, the Court declared, "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference, and absent a powerful countervailing interest, protection." Given the fundamental importance of these rights, their termination has been characterized as tantamount to a "civil death penalty." In re K.A.W. , 133 S.W.3d at 12. And in light of the rootedness and seriousness of parental rights, a court may terminate them only where clear, cogent, and convincing evidence is presented that such a termination is necessary. Santosky v. Kramer , 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ; see also S.S.S. v. C.V.S. , 529 S.W.3d 811, 815 (Mo.banc 2017) (reviewing "whether there was clear, cogent, and convincing evidence to support a statutory ground for terminating parental rights or to support a finding that a parent's consent is not necessary for adoption"). The nature of this evidence must "instantly tilt the scales in the affirmative when weighed against the evidence in opposition." In re T.S.D. , 419 S.W.3d at 895 (quoting In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo.banc 1984) ) (internal quotation marks omitted).
We now examine Missouri adoption law regarding abandonment and neglect and first observe that § 453.040(7) provides that consent to the adoption of a child is not required of:
A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and *826 continuously neglected to provide him with necessary care and protection[.]
The terms "abandonment" and "neglect" in § 453.040 are in the disjunctive; thus, either ground, if supported by substantial evidence, will obviate the need for parental consent to an adoption. In re T.S.D., 419 S.W.3d at 895.
Abandonment has been defined as the voluntary and intentional relinquishment of custody of the child to another with the intent to never again claim the rights of a parent or perform the duties of a parent, or as the intentional withholding by the parent of his or her care, love, affection, protection, and presence, without just cause or excuse. Id. Neglect, on the other hand, focuses on physical deprivation or harm, and has been characterized as a failure to perform the duty with which the parent is charged by the law and by conscience. Id. Neglect is the intent to forgo parental duties, which includes both the obligation to provide financial support for a minor child, as well as the obligation to maintain meaningful contact with the child. Id.
To determine whether abandonment or neglect has occurred, we examine the parent's intent. Id. The parent's intent, which may be an inferred fact, is determined by considering all of the evidence of the parent's conduct during, before, and after the statutory period. Id. However, the greatest weight is given to conduct during the statutory period and the least weight to conduct occurring after the petition was filed. Id. In reviewing the parent's intent, we defer to the trial court because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. Id. at 895-96. The trial court is in an especially advantageous position to determine the intent of a parent-witness in an adoption case. Id. at 896.
On this record, we find that the trial court reasonably concluded that Appellants failed to carry their burden to establish by clear, cogent, and convincing evidence Father's willful abandonment or willful, substantial, and continuous neglect of Child. Given Father's continuous and substantial support of Child, and his efforts to contact Child, exercise visitation, and fight termination-all of which he has managed despite suffering brain injuries severe enough to require temporary institutionalization and major surgery-the scales were not instantly tilted in favor of finding that Father had the intent to abandon or neglect Child. Like the trial court, we are mindful of the impact of Father's physical and mental challenges on his efforts to become more involved in Child's life.
Here, Father continuously provided Child with substantial SSDI benefits at all relevant times. SSDI benefits are legally recognized as a means for a disabled wage earner to support a child, Weaks v. Weaks, 821 S.W.2d 503, 505-07 (Mo.banc 1991), and they may be treated as evidence that a parent did not abandon a child. In re B.S.B., 76 S.W.3d 318, 326 (Mo.App.W.D. 2002). In fact, in her paternity action, the remedy Mother obtained was that Father's SSDI benefits be deemed child support.
Moreover, the court's finding that Father did not abandon or neglect Child was supported in the record by Father's attempts to contact Child and exercise visitation. In January 2015, Father sought to locate Mother and Child and contacted for assistance March Mediation, Mother's former attorney, the Social Security Administration, and mutual acquaintances, all of whom were either unwilling or unable to help him. Eventually, the St. Louis County *827 Police Department aided him in determining Mother and Child's new address. Father hand-delivered to their mailbox a letter requesting visitation, though he received no response. Then, on February 19, 2015-before Father learned that Appellants had already filed a petition for, and the court had entered, a judgment of adoption of Child-Father filed a family access motion. Further, once Father learned of the court's February 4, 2015 default judgment of adoption, he timely filed a motion to set it aside, and he has since litigated this case along its winding path through numerous motions, persisting sometimes even without the assistance of counsel.
We recognize that during the period from August 2009 to January 2015, Father did not attempt to make contact with Child. We do not condone any lack of contact between a parent and child when it is feasible and in the best interests of the child. Nevertheless, the trial court's task here was to determine on the whole record whether -and not to simply assume that-Father's absences from Child's life demonstrated an intent to abandon or neglect Child. In re T.S.D. , 419 S.W.3d at 895. On this record, not only was the trial court confronted with Father's sustained provision of SSDI benefits and his resolute attempts since January 2015 to become involved with Child's life, but there was also ample evidence that especially during the period from August 2009 to January 2015, Father faced serious obstacles to contacting Child and becoming involved. These included Father's accumulating health problems and temporary institutionalization, his substantial distance from Child while in Colorado, and Appellants' failure to keep Father informed of any facts about Child's life, including Child's (and Mother's) whereabouts.
In light of all these facts, we cannot convict the trial court of error in finding that Appellants failed to demonstrate by clear, cogent, and convincing evidence that Father willfully abandoned or willfully, substantially, and continuously neglected Child. And finally, because the trial court must first determine that willful abandonment or willful neglect has occurred before turning to the issue of the child's best interests, In re C.W. , 753 S.W.2d 933, 938 (Mo.App.E.D. 1998) (citing In re Adoption of R.A.B. , 562 S.W.2d 356 (Mo.banc 1978) ), we find that the court here had no occasion to do so.
Appellants' points on appeal are denied.
Conclusion
For the reasons stated above, we dismiss the appeal of the October 2015 judgment that set aside the February 2015 default judgment, and we affirm the court's September 2017 judgment.
Lawrence E. Mooney, J., and Jason M. Sengheiser, Sp., J., concur.

The guardian ad litem appointed in this case also appeals. We do not explicitly address the GAL's seven points on appeal because the GAL challenges the same two judgments for the same or similar reasons as Appellants. Thus, for brevity and simplicity, we refer throughout this opinion only to Appellants' appeal, though in substance we review the GAL's appeal, as well.

All rules references are to the Missouri Supreme Court Rules (2014).

"Any motion for new trial, motion to amend the judgment or opinion, or motion for judgment notwithstanding the verdict is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed."

We doubt whether service by publication was justified in this case though we do not make that decision nor is that decision necessary for our disposition of this case. Service by publication may be utilized only where there has been an "honest and reasonable effort" to locate a defendant for personal service. Williams v. Williams , 950 S.W.2d 919, 923 (Mo.App.W.D. 1997). Here, Appellants' efforts to personally serve Father consisted solely of hiring a special process server to perform a skip trace to locate Father, which was unsuccessful. With Father's parental lights at stake, the legitimacy of such process is dubious at best. And on this particular record, it was almost certainly not enough. Missouri appellate courts have held that where the serving party failed to consult mutual acquaintances with the party to be served to ascertain that party's whereabouts, the omission constituted "a failure to employ the most reasonable means to apprise" the party of their action. E.g. , In the Interest of K.K.M., 647 S.W.2d 886, 889 (Mo.App.W.D. 1983). Both sides here clearly had mutual acquaintances through whom they might have attempted to contact one another. Moreover, Father testified he attempted to contact Appellants by telephone and through social media, and that at one point he received a voicemail message in return from Stepfather.

We find to be inapplicable the two cases cited by the GAL, Ferguson v. Curators of Lincoln Univ., 498 S.W.3d 481, 495-96 (Mo.App.W.D. 2016) and In re Marriage of Noles, 343 S.W.3d 2, 9 (Mo.App.S.D. 2011), because they do not take account of the authority of the trial court under Rule 78.01 to, on a motion for new trial, open the judgment, amend findings of fact or make new findings, and direct the entry of a new judgment. Indeed, in our view the holdings of those cases are properly limited to the determination that an order granting a motion to amend -and not a motion for new trial-is insufficient to rule on a motion within the 90 days provided by Rule 78.06. See, e.g. , Noles, 343 S.W.3d at 8-9.