

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| AUTUMN LAKES ASSOCIATION, | ) | No. ED110228 |
| | ) | |
| Plaintiff, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 18SL-AC34738 |
| | ) | |
| JAME Q. TRAN, | ) | Honorable Matthew H. Hearne |
| | ) | |
| Defendant-Appellant/ | ) | |
| Cross-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TSJ HOLDINGS, LLC, | ) | |
| | ) | |
| Third-Party Intervenor-Respondent | ) | Filed: November 8, 2022 |
| /Cross Appellant. | ) | |

## I. Introduction

This case involves two appeals. One appeal challenges the setting aside of a default judgment for lack of proper service. That appeal is untimely and must be dismissed for lack of appellate jurisdiction. The other appeal challenges the judgment awarding damages on an unjust enrichment claim. There is no substantial evidence to support that judgment, and it must be reversed.

## II. Factual and Procedural Background

1

Jame Q. Tran owned a home in a neighborhood that was part of the Autumn Lakes Association. Autumn Lakes filed a petition against Tran for unpaid homeowner assessments ("HOA"). A special process server filed a return of service in the suit stating that he left the petition "at the dwelling place or usual abode of [Tran] with Ly Tran (mother-in-law) a person of [Tran's] family over the age of 15 years." Tran did not appear or otherwise answer the petition, and the circuit court entered a default judgment against him. Tran's home was sold by sheriff's sale to TSJ Holdings, LLC in December of 2019, but Tran remained in possession of the home thereafter.[1]

Shortly after the sheriff's sale, Tran filed a motion to set aside the default judgment under Rule 74.06(b)(4), claiming it was void because the petition was not properly served pursuant to Rule 54.13(b)(1) (2020).[2] In an affidavit attached to the motion to set aside, Tran attested that he resides at the service address with his girlfriend—whose surname is also Tran—and their daughter, but they are not married. He stated that Ly Tran is his girlfriend's mother, she does not reside with them, and she is not related to him by blood or marriage. Tran argued that abode service under Rule 54.13(b)(1) is only accomplished by serving a person whose residence with the defendant is of a permanent and domestic character, not by serving a person unrelated to him who does not reside in his home. The circuit court agreed that service on Tran was improper and, on February 19, 2020, entered a judgment setting the default judgment aside. Tran then moved to set aside the sale of the home to TSJ.

---

[1] TSJ filed an ejectment action against Tran, which was later dismissed without prejudice.

[2] At the time of service in this case, Rule 54.13 provided that personal service on an individual must be made as follows:

> . . . by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process.

Rule 54.13(b)(1) (2020) (emphasis added). That rule has since been amended, and the italicized portion was changed to "with some person at least 18 years of age residing therein[.]" Rule 54.13(b)(1) (2021).

While that motion was pending, TSJ filed a motion to intervene in the case and a motion to reconsider the February 2020 judgment setting the default judgment aside. The circuit court did not grant TSJ's motion to intervene until April 7, 2020. Thereafter, TSJ filed a third-party claim against Tran for unjust enrichment. TSJ alleged, among other things not relevant to these appeals, that TSJ purchased homeowner's insurance and incurred expenses related to management of the property, which Tran accepted. TSJ alleged that it would be unjust to allow Tran to retain that benefit. On November 20, 2020, the circuit court entered a judgment denying TSJ's motion to reconsider setting aside the default judgment, again concluding service was improper. In January of 2021, the circuit court granted the motion to set aside the sheriff's deed and cancel the sale.

The circuit court held a bench trial on TSJ's claim for unjust enrichment against Tran.[3] TSJ admitted a general ledger into evidence showing expenses and revenue relating to this property between the time it purchased the property and the time the sale was set aside. During that period of thirteen months, Tran remained the occupant of the home, while TSJ was the record owner. The ledger showed payments of $2,055 for a homeowner's insurance policy and sixty-three weekly expenditures of $60 for "property management fees." TSJ's owner testified that it purchased the insurance because TSJ needed "to protect our liability in the event of injury, fire, et cetera, those other things." He agreed the insurance policy was meant to "protect [TSJ's] asset" and explained his understanding that the insurance must be carried by the property owner. He agreed that Tran was not named as an additional insured on the policy.

TSJ's owner testified that the "property management fees" were "for accounting services, for property checks, just general management of a property acquired." Management of this property, he said, included "numerous activities," such as speaking with Autumn Lakes regarding

---

[3] Autumn Lakes also presented evidence on its claim against Tran for unpaid HOA fees, which is not at issue in either appeal.

3

the property, "property checks to check occupancy status, condition, property checks when the municipality sent a complaint, accounting fees, and just general expenses that are accrued and managed as any property would be." TSJ's owner also testified that because the occupancy status was unknown, managing this property required "a lot of time and effort." He agreed on cross-examination that TSJ had never been inside the home and had done no maintenance to the property, such as mowing the lawn or servicing the pool, but he denied that the property management fee was for little more than watching the home to see if someone lived there. When asked how Tran benefited from TSJ's management of the property, TSJ's owner testified:

> [T]here were numerous benefits to somebody who is occupying the property as to, you know, who is paying the MSD bill, and is it going to be paid, should there be collection on that, who's paying the HOA fee, should we continue to go knock on the door to try and collect HOA fees. So, yes, there was time and money spent.

The circuit court entered judgment against Tran, finding that he was unjustly enriched by TSJ's purchase of homeowner's insurance and management of the property. The circuit court awarded TSJ $2,055, representing the full amount TSJ spent on homeowner's insurance, and $1,890, representing half of the weekly property management fees. Tran was also ordered to repay TSJ for the real estate taxes it paid on the property and to pay Autumn Lakes the outstanding HOA fees, late fees, and legal fees. Tran had agreed at trial that he was responsible for the MSD bills TSJ paid, and the judgment does not include any order regarding those bills.

These appeals follow. Tran challenges the judgment only with respect to the finding that he was unjustly enriched by TSJ's purchase of insurance and management of the property. TSJ challenges the circuit court's conclusion that service was improper.

## TSJ's Appeal

This Court has a duty to assess whether it has jurisdiction over an appeal *sua sponte. D.A.D. v. J.B.D.*, 81 S.W.3d 2, 3 (Mo. App. E.D. 2002). After reviewing the briefs

4

and the record on appeal, this Court ordered TSJ to show cause why its appeal should not be dismissed for lack of jurisdiction. The primary question raised in the order to show cause was whether TSJ's notice of appeal, which claims error in the circuit court's February 2020 judgment setting aside the default judgment, was timely filed. TSJ responded to that order, and Tran replied. After reviewing the record and the arguments of the parties, we find that TSJ's notice of appeal was not timely filed and we do not have jurisdiction to hear TSJ's appeal.

"'Timely filing of a notice of appeal is jurisdictional.'" *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 471 (Mo. banc 2011) (quoting *Berger v. Cameron Mutual Insurance Company*, 173 S.W.3d 639, 640 (Mo. banc 2005)). "If a notice of appeal is untimely, the appellate court is without jurisdiction and must dismiss the appeal." *Id.* (internal quotation marks omitted). Under Rule 81.04(a),[4] a notice of appeal must be filed within ten days after a judgment becomes final. Rule 81.05(a)(1) states that a judgment becomes final "at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." In addition, to be final, a judgment must dispose of all parties, resolve all issues, and leave nothing for future determination. *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012).

TSJ filed its notice of appeal on December 20, 2021. TSJ's notice stated that it was appealing the November 8, 2021 judgment. But the only error asserted in TSJ's notice and in its Points Relied On is error related to the circuit court's February 2020 judgment setting aside the default judgment and the November 2020 judgment denying TSJ's motion to reconsider the February 2020 judgment. TSJ contends that those 2020 judgments were not "final judgments" because the underlying claims against Tran remained pending and, as a result, an immediate appeal would have been premature. TSJ argues that the circuit court did not issue a final judgment until

---

[4] All rule references are to the Missouri Supreme Court Rules (2021), unless otherwise noted.

the November 2021 judgment, which resolved all claims between all parties and necessarily incorporated the circuit court's prior judgments. As a result, TSJ asserts its appeal from the November 2021 is the timely and proper means by which to challenge the circuit court's ruling regarding service in those 2020 judgments.[5]

The flaw in TSJ's argument is that the circuit court's "ruling on a Rule 74.06(b) motion is in the nature of an independent proceeding and is appealable." *Bate v. Greenwich Insurance Company*, 464 S.W.3d 515, 517 (Mo. banc 2015). At the time that Tran filed his motion to set aside the judgment under Rule 74.06(b), the default judgment had already become final and the circuit court had already lost jurisdiction over the judgment. *See* Rule 75.01. Tran's Rule 74.06(b) motion operated as a separate, collateral proceeding with respect to that judgment. *Bate*, 464 S.W.3d at 517. The only question at issue in that proceeding was whether Tran had been properly served. When the circuit court entered its February 2020 judgment setting aside the default judgment, it resolved all of the issues related to the independent Rule 74.06(b) proceeding, leaving nothing for future determination. *See Matter of A.R.V.*, 561 S.W.3d 817, 823 (Mo. App. E.D. 2018) (rejecting argument that judgment was not final because claims in underlying action remained pending). The February 2020 judgment was, therefore, a final judgment in the independent proceeding under Rule 74.06(b) and became appealable at the expiration of thirty days. *See id.* at 823-24; *see also* Rules 81.04(a) and 81.05(a). [6]

---

[5] TSJ contends it is not only aggrieved by the service rulings incorporated into the November 2021 judgment, but also by the express terms of that judgment itself because it was not awarded all of the damages it requested. But TSJ has not raised any challenge in its Points Relied On to the amount of damages. Therefore, to the extent TSJ may have had standing to appeal that aspect of the November 2021 judgment, it has not preserved any claim of error therein for this Court's review.

[6] Because of the independent nature of the two proceedings, appealing separately from the judgments entered in those proceedings would not have, as TSJ claims, run afoul of the fundamental prohibition against "piecemeal appeals." TSJ points out that Tran's motion to set aside the sheriff's sale was still pending at the time the February 2020 judgment was entered. If that issue "arose as part of" the independent action to set aside the default judgment, the fact that it was pending may have had an impact on the finality of the February 2020 judgment. *See Matter of A.R.V.*, 561 S.W.3d at 823. Even assuming that was true, that issue was resolved in a January of 2021 judgment. To the extent

6

Moreover, the motion to reconsider that TSJ filed along with its motion to intervene did not operate to extend the time period in which the February 2020 judgment became final. The thirty-day period can be extended "[i]f a party timely files an authorized after-trial motion." Rule 81.05(a)(2). But "[o]nly parties may file authorized after-trial motions." *State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239, 242 (Mo. banc 2019). "Motions filed by non-parties are not authorized after-trial motions that extend the circuit court's jurisdiction pursuant to Rule 81.05(a)." *Id*. At the time TSJ filed its motion to reconsider the February 2020 judgment, its motion to intervene—filed at the same time as the motion to reconsider—had not yet been granted. Therefore, TSJ was not a party at that time, and the motion to reconsider did not extend the circuit court's jurisdiction over the February 2020 judgment. That TSJ was later permitted to intervene without objection does not change the fact that at the time the motion to reconsider was filed, TSJ was not yet a party. Because no *party* filed an authorized after-trial motion, the February 19, 2020 judgment became final on March 20, 2020. Any appeal therefrom was due ten days later, and the notice of appeal filed by TSJ one year and nine months later is untimely.

For the foregoing reasons, this Court has no jurisdiction to review the merits of TSJ claims on appeal.[7] TSJ's appeal is dismissed.

### Tran's Appeal of Unjust Enrichment Judgment

On review of a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies

---

January of 2021 was the triggering date for TSJ's appeal of issues relating to setting aside the default judgment, its appeal eleven months later would still be untimely.

[7] Thirty days after entry of the February 2020 judgment, the circuit court lost jurisdiction and the ability to amend, vacate, reopen, correct, or modify the judgment. Rule 75.01. For this reason, this Court is also unable to entertain any appeal from the November 2020 judgment. Even if the circuit court had retained jurisdiction, an appeal from that judgment would have been untimely for all of the reasons set forth in this section.

the law. *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). We view the evidence and the reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *Id*. at 200. In his two points on appeal, Tran contends that the circuit court's finding that he was unjustly enriched by TSJ's purchase of a homeowner's insurance policy and payment of property management fees is not supported by substantial evidence. We agree.

"The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit; and (3) acceptance and retention of the benefit under circumstances that without payment would be inequitable." *Hoffmeister v. Kranawetter*, 407 S.W.3d 59, 61 (Mo. App. E.D. 2013). "The essence of unjust enrichment is that the defendant has received a benefit that it would be inequitable for him to retain." *Pitman v. City of Columbia*, 309 S.W.3d 395, 403 (Mo. App. W.D. 2010). The focus is not on the loss sustained by the plaintiff, but on the benefit to the defendant. *Inauen Packaging Equipment Corporation v. Integrated Industrial Services, Inc.*, 970 S.W.2d 360, 366 (Mo. App. W.D. 1998). Moreover, in the unjust enrichment context, the value of the benefit received by the defendant is not necessarily equal to the amount expended by the plaintiff. *Patrick V. Koepke Construction, Inc. v. Woodsage Construction Company*, 844 S.W.2d 508, 516 (Mo. App. E.D. 1992). Therefore, the plaintiff must present evidence of the amount of the benefit conferred on the defendant. *Winslow v. Nolan*, 319 S.W.3d 497, 503 (Mo. App. E.D. 2010).

Here, there is no substantial evidence that Tran received a benefit from TSJ's purchase of homeowner's insurance or expenditure of property management fees. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment*." Ivie*, 439 S.W.3d at 199. Evidence has probative force when it tends to make a material fact more or less likely. *Id.* "A witness'[s] testimony predicated on a guess

8

or speculation with no factual basis does not constitute substantial evidence and has no probative value." *American Standard Insurance Company of Wisconsin v. Bracht*, 103 S.W.3d 281, 292 (Mo. App. S.D. 2003). A judgment is "not supported by substantial evidence if it is based on speculation." *Schneithorst v. Schneithorst*, 473 S.W.3d 239, 247 (Mo. App. E.D. 2015).

There was no evidence at trial as to how Tran benefited from TSJ's purchase of homeowner's insurance. TSJ's owner testified only that the insurance protected TSJ's asset and acknowledged that Tran was not named as an additional insured on the policy. Nothing in the record suggests that Tran was entitled to receive any insurance proceeds or to direct how those proceeds were to be used. Instead, the evidence at trial was that TSJ purchased insurance for property it owned to protect its own interest and that only TSJ was entitled to recover for a loss under that policy.

Nonetheless, TSJ argues that "[i]f a covered incident had occurred while TSJ owned the property and maintained the coverage, Tran would have benefitted from the repairs to the damage to his home, which he at all times lived in, and of which he eventually recovered ownership." In other words, *if* there had been a covered incident at the property, and *if* that incident caused damage to the home, and *if* TSJ had received insurance proceeds, and *if* it had used those proceeds to repair that damage, then Tran would have benefitted from those repairs. But nothing in the evidence before the circuit court required TSJ to use any insurance proceeds to repair the property, thereby rendering this perceived benefit entirely speculative and dependent on a future action of TSJ that TSJ had no obligation to take. The doctrine of unjust enrichment does not require restitution "'for the creation of a rather slim possibility that the party may receive some benefit in the future.'" *JB Contracting, Inc. v. Bierman*, 147 S.W.3d 814, 820 (Mo. App. S.D. 2004) (quoting 66 AM. JUR. 2D *Restitution and Implied Contracts* § 13 (2001)).

9

In addition, nothing in the record demonstrates that the property was uninsured at the time that TSJ purchased insurance. In determining whether TSJ conferred a benefit on Tran, we do not ask whether TSJ incurred a loss, but whether Tran received something of value. *Inauen Packaging*, 970 S.W.2d at 366. From the evidence presented to the circuit court, it is unclear that Tran received anything that he did not already have when TSJ purchased insurance on the property. As a result, the circuit court's determination that Tran was benefited by TSJ's purchase of insurance for the property is not supported by substantial evidence.

Point I is granted.

Similarly, there is no substantial evidence that TSJ's expenditure of fees to manage the property during the time that it was the record owner benefited Tran. This case presents a somewhat peculiar set of facts. It starts with a relatively straightforward circumstance: TSJ purchased a property at a sheriff's sale. TSJ then, reasonably, recorded a sheriff's deed and began to treat the property as its own, including expending a weekly fee of $60 to manage the property. Where the facts become unusual is when Tran sought to undo the sale by contesting service. Tran, at all times, remained in the property and treated it as his own. A short time later, the circuit court set aside the default judgment and found that the sheriff's sale was improper because the authorizing judgment was void for lack of service. Ownership of the property officially reverted to Tran, and TSJ was left with money expended for management of a property it no longer owned. TSJ understandably sought to recoup these expenses from Tran, and in many cases such a recovery might be appropriate. For instance, in typical collections actions, particularly those involving a forced sale, fees related to management of properties are commonly awarded as a portion of the creditor's costs in recouping the debt owed. But this is not one of those cases.

10

In this case, TSJ sought to recoup those fees on a theory of unjust enrichment. To recover on that theory, TSJ had to present substantial non-speculative evidence showing that Tran benefited by TSJ's property management activities and demonstrating the value of that benefit. TSJ has not done so. The fact that TSJ spent $60 a week managing property it owned—for an interim period and by virtue of a sale that Tran successfully challenged—shows that it incurred a loss. But it does not demonstrate that Tran benefitted therefrom or the value of any such benefit. And, in an unjust enrichment case, only the benefit conferred is compensable.

When asked how property management benefitted Tran, TSJ's owner testified that, as the occupant of the property at that time, Tran benefitted because TSJ spent time and money managing payment of the MSD bills and HOA fees. But TSJ's payment of utility bills and HOA fees are accounted for elsewhere on the expense ledger admitted into evidence at trial and cannot also be encompassed by the "property management fees" category.[8] Evidence that Tran may have benefited from TSJ's payment of those other items is not probative of what benefit he received from TSJ's payment of property management fees.

As to the remaining activities that were encompassed by the "property management fees," there was no evidence at trial regarding their benefit to Tran in the particular circumstances of this case. According to TSJ's owner, those activities included accounting, checking on the condition and occupancy status of the property, checking the property in response to "municipality complaints," communicating with Autumn Lakes, and "general management." TSJ admitted it never went inside the home or performed any actual maintenance on the property. That TSJ managed the property in these ways is not probative of how they benefited Tran, nor is it reasonable to draw an inference that he has benefitted. For instance, it is not reasonable to infer that accounting

---

[8] There is no dispute that Tran is responsible for payment of the MSD bills and HOA fees paid by TSJ while TSJ was the record owner of the property.

11

services for *TSJ* benefitted Tran. Nor is it reasonable to infer that Tran received a benefit by TSJ's "property checks" given that Tran, the occupant, was aware of its occupancy status and its condition. And, without knowing the content and the frequency of the communications TSJ had with others about the property, it is not reasonable to infer they were for Tran's benefit. More simply put, TSJ presented evidence of how property management services benefited TSJ, the non-occupant owner of the property. TSJ did not show how those services benefited Tran, the occupant of the property.

TSJ's only argument on appeal—unsupported by citations to the record—is that if it had not engaged in these property management activities and "ensured bills related to the property were paid when due" while it owned the property, there would have been "adverse consequences to Tran, including potential liens against the property, when Tran recovered ownership." But there is no evidence in the record and no evidence from which to draw the inference that such unspecified negative collateral consequences would have befallen Tran. TSJ merely speculates about what might have happened if TSJ had not been managing the property during the time it owned it, which is not substantial evidence of an actual benefit to Tran sufficient to support an unjust enrichment claim. *See Bierman*, 147 S.W.3d at 820. Moreover, at the time those payments were made, TSJ was the record owner of the property and was solely responsible for ensuring their payment. TSJ's decision to use a management company to manage its obligations did not benefit Tran here. This is particularly true given that the record contains no evidence that Tran, as the non-owner of the property, would have had access to bills or payment options for a property he did not own at the time.

Nothing in this Opinion should be interpreted as holding that "property management fees" are never recoverable or are categorically without benefit. Whether a defendant in an unjust

12

enrichment case has received a benefit from a plaintiff's particular action or expenditure necessarily requires case-by-case examination. On the peculiar facts of this unjust enrichment case, TSJ did not present substantial evidence that the management services it provided conferred a benefit on Tran.

Point II is granted.

## IV. Conclusion

TSJ's appeal is dismissed. The portion of the November 8, 2021 judgment finding that Tran was unjustly enriched when TSJ paid for property insurance and property management fees is reversed.

_____
John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.

13